A AND P MOBILEHOME COURT, INC. *v.*
TOWN OF GROTON

SUPERIOR COURT          NEW LONDON COUNTY          FILE NO. 25231

Memorandum filed April 6, 1959

*Timothy O'Neill Fanning,* of Hartford, for the plaintiff.

*Waller, Smith & Palmer,* of New London, for the defendant.

TROLAND, J. This is an action for a declaratory judgment. The plaintiff claims it has established a nonconforming use of its premises in Groton for a mobile home park. This is denied by the defendant. There are other questions relating to the validity of the zoning regulations of Groton raised by the pleadings.

On January 9, 1957, James J. Gallagher, acting for himself and other persons, who were then the owners of a tract of wooded land on route 84 in the town of Groton, filed with the assessor of said town an application for a building permit. The application stated, under the heading "State Nature of the Proposed Work," "Utility Building 40 x 40 containing 150 trailers." Under the line "estimated cost" appeared "30000." On the reverse of the application appears the following: "Permit. Date Jan. 9 1957. This is to certify that Ganacopolos et al. is hereby granted permission to build a trailer park on property located at Rt. 84 in accordance with above application. Wm A. Hall—B Assessor." And also the following: "Building Permit. Permit No. 1683. Date of application Jan. 9 1957. Location Rt. 84 north side. Owner Ganacopolos et al. Applicant— Permit issued Jan. 9 1957. Estimated cost $30000. Fee $1.00. Approved by Assessor Wm A. Hall—B. DATE Jan. 9, 1957."

At that time there was in force in Groton an "Ordinance on Construction of Buildings" which provided that before any person shall erect, construct, alter or remove any building or buildings, he or they shall make written application to the assessor for a permit and obtain his approval in writing.

The purpose of the ordinance was that the assessor be on notice of any new construction or alteration of buildings in Groton which would affect the grand list of said town. The issuance of the permit was automatic. He had no discretion to use and no standards to enforce. The fee was a nominal $1 for all permits, except that for construction or alteration of a small character the assessor was authorized to waive the fee.

Although a zoning and planning commission had been in existence for several months, its work was then in the planning stage and no zoning ordinance had been enacted in Groton at said time. Thereafter, the services of an engineer were engaged by Gallagher et al. to survey their land and to plan a mobile homes park. The services of the engineer began in January, 1957, and through June, 1957, involved an expense of approximately $1200. This survey, however, included adjoining land of ten acres not then owned by the plaintiff or Gallagher et al. but which they contemplated buying, as their original seven acres could not accommodate the 150 mobile homes they had in mind.

The last week in May, 1957, a woodcutter was engaged to clear trees and brush from certain roadways as indicated on the engineer's plan. He worked by the day, sometimes with help, and cut on both the seven-acre tract owned by Gallagher, Ganacopolos et al. and the adjoining ten-acre tract. There is no way for the court to apportion this expense. Up to June 22, 1957, the date on which zoning went into effect in Groton, the expense for all the clearing was $1960.09. By that time some proposed roadways were well defined, the trees having been cut flush with the ground, but no bulldozer work or grading had been done. The survey and planning by the engineer and the tree cutting mentioned above were the only work done.

Prior to the happenings mentioned above, on June 14, 1956, a special town meeting was held in Groton at which the powers for zoning and planning afforded by the General Statutes were adopted for that portion of the town not included within the limits of boroughs or fire districts entitled to zone. A zoning and planning commission was created with all the powers and duties provided by law and also a zoning board of appeals. Gallagher and his co-owners of the property were aware of the action of the town meeting adopting the concept of zoning for the town. Although the plaintiff has challenged the legality of the appointment of the zoning and planning commission, the court finds that this commission was duly and legally constituted. Thereafter, the commission engaged technical assistance in carrying out its functions and on June 22, 1957, the duly adopted zoning regulations for said town went into effect. At the time of the enactment of the zoning regulations on June 22, 1957, there were in the town of Groton 15 trailer camps or parks, with 500 trailers in them, which became nonconforming uses.

Work on cleaning roadways on plaintiff's land continued through June and early July, 1957. On July 29, 1957, the zoning inspector sent a notice to James Gallagher, Alexander Ganacopolos and William Ganacopolos that the permit issued January 9, 1957, "to construct a utility building and a trailer park for 150 trailers is now revoked by adoption of Zoning Regulations." On July 26, 1957, The Fapp Realty Company, Inc., conveyed to A and P Mobile-home Court, Inc., a tract of land on the northerly side of route 84 in Groton, Connecticut, containing about ten acres, being the land adjoining land of Ganacopolos, Gallagher, et al. mentioned in the permit of January 9, 1957. Thereafter on March 7, 1958, in what is entitled "Appeal from decision of Zoning and Planning Board, Town of Groton,"

A and P Mobilehome Court, Inc. states: "To the Board of Appeals—I hereby appeal from determination of Zoning and Planning Board, Town of Groton dated    , 19   , denying it a permit to build a mobilehome park." It asks "determination of whether or not appellant has a non-conforming use—claim is such exists; and basis of hardship." In its appeal and claim of hardship, A and P Mobilehome Court, Inc., states that the specific hardship is "client bought land for purpose only of building a mobile home park, when no Zoning existed." On April 14, 1958, the above application was denied by the zoning board of appeals, on the following grounds: "a. The proposed development is not in harmony with the general purpose and intent of the Zoning Regulations.  b. The Board does not find sufficient or unusual hardship.  c. It is not the function of this board to determine nonconforming use in this case."

By the zoning regulations, plaintiff's land was placed in the commercial district described as CB. In this district all uses permitted in a residence or rural district, and in addition retail stores, offices, and heavy business, garages, etc., are permitted. The permissive uses are very broad.  Among the permitted uses are hotels, restaurants and boarding houses.  The business of operating or maintaining a "mobile home park" is not mentioned as a permitted use in any zone.  It is plaintiff's claim that the failure to mention "trailer park" or "mobile home park" as permitted uses in the town denies to plaintiff the use of its land guaranteed to it by the constitution of the United States and the state of Connecticut. The General Statutes authorize towns except as otherwise provided by special act and except where there exists a local zoning commission, which commission is then so empowered, to regulate and provide for the licensing of parked trailers, when located off the public highways, and trailer parks or

mobile home parks. Rev. 1958, § 7-148. There is no direct regulation of trailer parks or mobile home parks in the present zoning ordinance in Groton.

This action raises an interesting question: What is a "mobile home park"? According to the testimony offered by the plaintiff on the matter, plaintiff's "mobile home park" when completed and in operation would be a subdivision of its acreage, with roads 50 feet wide and having sidewalks, affording access to 150 lots or tracts of the land, each containing from 2400 square feet minimum area to 5000 square feet as a maximum area. Each of these lots or tracts would be provided with water, electrical facilities and access to a septic tank sewerage system, one field for each two "mobile homes." In some of the testimony these tracts or lots are referred to as "stalls." Plaintiff envisages a "mobile home" as "preassembled housing"—"a unit similar to a trailer that has complete sanitary facilities including a flush toilet, a lavatory, etc. It is generally over 35 feet in length and can be 8 but is usually 10 feet wide, and is not subject to legal movement on the highways without special permits, therefore is not subject for camping use." The unit is of course mobile. It is moved to its destination in the mobile home park, where a matter of basic interest to the community and to the "mobile home" industry is the size of the lot. The "mobile homes" may vary from 10 feet wide by 35 feet long to 10 feet wide by 70 feet long. Plaintiff contemplates that the users of its lots or stalls will become residents of the town of Groton and that their average stay in the park will be approximately five years. The "mobile home" when it comes to rest on its lot in the park and is connected with the water, sewer and other facilities becomes in fact a single-family residence. Each lot of land on which the "mobile home" comes to rest thus becomes devoted to use as a site of a single-

family residence or home. It is this use of the land that is regulated by the Groton zoning ordinance.

It can hardly be said that by cutting some trees and brush as an indication of future road development this plaintiff now has carte blanche, as a nonconforming use of its property, the right to subdivide its acreage into lots or stalls of any size as it may determine and rent such lots or stalls, with the incidental utilities, as semipermanent resting places for "mobile homes," thereby establishing a density of occupation of the land by the various families assembled without regard to the provisions of the zoning ordinance concerning such matters. For instance, in a commercial zone in Groton, the minimum lot area for a family-unit home occupancy is 10,000 square feet. With respect to plaintiff's seven-acre tract, no access roads had been built. No provisions for water, sewer or other utilities had been provided. The utility building had not been constructed. There were no trailers or "mobile homes" on the land. The property of the plaintiff was not being used as a mobile home park on the date of the enactment of the Groton zoning ordinance. Whatever work the plaintiff had done was not sufficient to put the property into actual utilization as a "mobile home park" so that it would naturally be recognized in the neighborhood as such. There was no existing nonconforming use of the property which, under the terms of the ordinance, the plaintiff was entitled to continue. *Wallingford* v. *Roberts*, 145 Conn. 682, 684; *Fairlawn Cemetery Assn., Inc.* v. *Zoning Commission*, 138 Conn. 434, 445; *DeFelice* v. *Zoning Board of Appeals*, 130 Conn. 156, 161.

The town of Groton contains about thirty-five square miles. In it at the time of zoning were approximately 5000 dwellings. At the same time there were 15 trailer parks or camps containing approxi-

mately 500 trailers. These parks or camps continue as nonconforming uses but are subject to regulation if and when the zoning and planning commission decides to exercise its powers with respect thereto. Under all the circumstances, the omission of any direct mention of a "mobile homes park" as a permitted use of land anywhere in the town of Groton does not render the zoning law void or unconstitutional and does not deprive this plaintiff of the right to use its land in violation of the constitution of the United States or the state of Connecticut. It should be noted that "public parking areas," without further definition, are permitted in the commercial zone.

Judgment may enter accordingly with costs for the defendant.