The plaintiffs have appealed from a decision of the defendant board, entered on or about February 3, 1971, involving a vacant seventeen-acre parcel of land located on Poquonock Avenue, Windsor.
 I
The defendant's ruling sustained the action of the Windsor building inspector denying the plaintiffs' application on December 9, 1970, for a site development permit, hereinafter called "permit," for their property. The application was filed pursuant to § 6.03 of the Windsor zoning regulations. Section 6.03 further provides that such a permit shall be obtained prior to a building permit.
The plaintiffs' petition sought a permit for construction of 152 garden apartment units. Their land was zoned AA residential, the highest single-family residential zone under the regulations. The building inspector denied the application, since garden apartments were not a permitted use in an AA residential zone, and further since an AA residential zone did not require a site development permit. As noted, the plaintiffs' appeal to the defendant board was unsuccessful. As the minutes of the defendant reflect, it ruled that the building inspector had been correct in his interpretation of the zoning regulations, in that they did not permit multiple units in a single-family AA residence zone.
The plaintiffs purchased the land on July 6, 1966, for about $53,435. In 1966, multifamily apartments were not a permitted use in any part of Windsor, under the regulations in force at that time. *Page 159 
On February 13, 1968, the Windsor town plan and zoning commission, hereinafter called "commission," adopted a new regulation, permitting garden apartments, under a classification known as RHD. The plaintiffs thereafter applied to change their parcel from AA residential to RHD. On September 24, 1968, the commission denied the plaintiffs' petition. The plaintiffs did not take any appeal from that decision.
On April 8, 1969, the commission took action to repeal the RHD zoning classification. During the period of its existence, construction of some 1500 garden apartment units had been approved.
On October 14, 1969, the plaintiffs' optionee applied to change the zone of the parcel from AA residential to agricultural, and thus to permit a convalescent home as a special use. When the commission denied the application, an appeal was taken to this court, which sustained the commission. The plaintiffs did not prosecute any further appeal.
The plaintiffs' instant appeal prays for reversal of the defendant's decision, and for an order directing the issuance of the site development permit, for two reasons. First, the plaintiffs allege that the Windsor zoning ordinance and regulations are unconstitutional, when applied to the plaintiffs' property, since they are confiscatory and deprive the plaintiffs of their property rights without just compensation. Next, they assert that the entire Windsor zoning ordinance and regulations are unconstitutional in that the "exclusion of multi-family uses" has no substantial bearing on the public health, safety, morals and welfare.
Because of the serious constitutional issues raised by the plaintiffs at the hearing before the defendant board and on appeal, extensive testimony on these *Page 160 
issues was taken by this court, pursuant to General Statutes § 8-8. Strom v. Planning Zoning Commission,153 Conn. 339, 344.
The plaintiffs' constitutional challenge is quite vague. They do not state whether they are invoking the state or federal constitutions, or both, nor do they specifically cite any provisions of either constitution alleged to have been violated. If the court adopts the most liberal interpretation of the plaintiffs' position, however, their strategy seems identical to that of the opponents of zoning in Euclid v.Ambler Realty Co., 272 U.S. 365, 395. In that case, the attack was based on an illegal use of the police power of the town, acting through its local zoning officials, agencies, and regulations.
When the plaintiffs applied for the permit in 1970, nothing in the regulations expressly prohibited or permitted erection of apartments. The plaintiffs' appeal, in effect, urges the court to cure an omission in the regulations by judicial fiat, so as to permit erection of apartments, even though apartments are not specifically excluded. See A P MobilehomeCourt, Inc. v. Groton, 21 Conn. Sup. 275, 282.
At the request of the parties, and in the company of both counsel, the court made an inspection of the premises. A view of the premises did not disclose any additional facts or provide any observations from which any further facts could be inferred that cannot be found in the record.
The plaintiffs' appeal must fail, for the reasons appearing hereinbelow.
 II
The plaintiffs' initial and novel tactic lacks merit. They applied for a permit for garden apartments, well knowing that nothing in the existing regulations authorized such construction in Windsor. *Page 161 
Their brief explains the four alternative possibilities for securing such permission and offers reasons for seizing on the device of a permit as a means of achieving their objective. Their explanations were not persuasive. One of the standard procedures for securing a zone change or variance should have been utilized in this case.
Moreover, the application for a permit, under the circumstances, was a nullity from its very inception. Section 6.03 of the Windsor zoning regulations states that such permits are required in all zones except single-family residence zones. Therefore, there was no necessity or obligation of the plaintiffs to apply for such a permit relative to their parcel, classified then, and now, as AA residential.
Further, there is even less justification for the plaintiffs to ask this court to order issuance of a permit to them, in the absence of any legal support whatsoever for their original request. The plaintiffs have not supplied the court with any authority to validate the procedure they adopted herein.
The building inspector and, in turn, the defendant board had no authority to issue or approve a permit for apartments, in the absence of a regulation permitting such construction in the town. State exrel. LaVoie v. Building Commission, 135 Conn. 415,422-23.
 III
As a corollary to the statements in part II, it is well to remember the basic function of this court on the present appeal. The decision of the defendant board should be overruled only when it has not acted fairly, with proper motives, and upon valid reasons. Krejpcio v. Zoning Board of Appeals,152 Conn. 657, 662. Relief will be granted only when the defendant has been proven to have acted illegally, *Page 162 
arbitrarily, or in abuse of its discretion. Hall
v. Planning Zoning Board, 153 Conn. 574, 577. Certainly, the defendant board acted reasonably, and within its statutory authority, by denying a permit for apartments for which no authority existed in the regulations.
Thus, if judicial review were to be limited to actions of the defendant board, based on the above well-settled rules, the determination by this court could be limited to the comments set forth hereinabove.State v. Stoddard, 126 Conn. 623, 633. They are fully dispositive of this case. Since, however, the plaintiffs have raised substantial questions of constitutionality, some reference thereto is appropriate, in view of the public interest involved. West
v. Egan, 142 Conn. 437, 441.
 IV
The plaintiffs likewise encounter a formidable obstacle on this phase. By invoking provisions of the Windsor regulations to process their case, they cannot be heard on a challenge to the constitutionality thereof. J M Realty Co. v. Norwalk, 156 Conn. 185,191; St. John's Roman Catholic Church Corporation
v. Darien, 149 Conn. 712, 717; Florentine v.Darien, 142 Conn. 415, 428; Piccolo v. West Haven,120 Conn. 449, 455; Chudnov v. Board of Appeals,113 Conn. 49, 57. As stated in Strain v. ZoningBoard of Appeals, 137 Conn. 36, 38, in a situation similar to the instant one, "[t]he plaintiffs cannot seek the approval of the zoning board of appeals under a provision of the zoning regulations and at the same time attack the constitutionality of its power to act thereunder."
This rule does not prevent the plaintiffs from seeking relief in an independent proceeding. West v.Egan, supra, 441. the plaintiffs have, however, failed to do so. *Page 163 
 V
One of the two major contentions of the plaintiffs, as contained in the body of their appeal, is that the defendant erred in not holding the Windsor zoning ordinance and regulations unconstitutional because of their failure to permit multifamily use within the town.
At the threshold, this allegation, if taken literally, is without substance, insofar as it attacks the failure of the defendant to declare the Windsor zoning enactments unconstitutional. It is axiomatic that an administrative board such as the defendant is a creature of statute. It has only such powers as are conferred upon it by statute and any regulations enacted pursuant thereto. General Statutes § 8-6. Nothing in the statutes or in any authority cited by the plaintiffs confers power on the defendant to make a declaration of unconstitutionality as to any part or all of the Windsor zoning regulations. Jurisdiction over such issues rests solely with the judiciary.Riley v. Liquor Control Commission,153 Conn. 242, 250; Preveslin v. Derby Ansonia DevelopingCo., 112 Conn. 129, 145.
The plaintiffs' claim nevertheless warrants consideration on this appeal, since their prayers for relief do request judicial review on the constitutionality question.
The plaintiffs essentially urge that the apartment exclusion is an illegal use of the police power.Euclid v. Ambler Realty Co., 272 U.S. 365, 395, states that the zoning restriction must have a reasonable relationship to the public health, safety, morals, or general welfare, if it is to be sustained as a valid exercise of the police power inherent in zoning. See Schwartz v. Kelly, 140 Conn. 176,179-80. *Page 164 
Section 8-2 of the General Statutes authorizes zoning commissions to "regulate," inter alia, "the location and use of buildings, structures and land for . . . residence or other purposes." The power to regulate entails a certain amount of prohibition, under particular circumstances. Cameo Park Homes, Inc.
v. Planning Zoning Commission, 150 Conn. 672,677; Hartland v. Jensen's, Inc., 146 Conn. 697, 702; 8 McQuillin, Municipal Corporations (3d Ed. Rev. 1965) § 25.119, p. 320; 101 C.J.S., Zoning, § 5, p. 675.
Thus, in this state, as an incident to the police power, total prohibitions of certain activities or land uses may be legal and constitutional. The exclusion may apply to cemeteries (Fairlawns CemeteryAssn., Inc. v. Zoning Commission, 138 Conn. 434); removal of gravel (Calve Bros. Co. v. Norwalk,143 Conn. 609); mobile home parks (Hartland
v. Jensen's, Inc., supra); or the entry of garden apartments into districts designed primarily for one-family homes. Cameo Park Homes, Inc. v.Planning Zoning Commission, supra.
In the recent and very relevant case of Cadoux
v. Planning Zoning Commission, 162 Conn. 425, cert. denied, 408 U.S. 924, the town of Weston had been zoned exclusively as a residential and farming district. The plaintiff made an application for an amendment to the zoning regulations which would establish a town shopping center district. One shopping center existed therein as a nonconforming use. The denial of his application was sustained in the face of an attack based partially on constitutional grounds. The court stated that it could not say that the denial was unreasonable, or that the commission failed to consider the needs of the community, by virtue of its exclusion of commercial activity from the town. *Page 165 
 VI
The above authorities support the conclusion of the defendant board in the instant case as proper under the police power.
As the record shows, the town of Windsor is a suburb just north of Hartford, with an area of 31.2 square miles and a population in 1970 of some 22,500 people. The major area of the town is residential, and one-family homes predominate therein. A portion of the town is zoned for industry.
Up to February, 1968, there were only 173 garden apartment units in Windsor, representing about 3 percent of the total dwelling units in the town.
During the fourteen-month period that the RHD zone was in effect, and up to April, 1969, the commission granted approval for the construction of some 1500 garden apartments. Upon completion thereof, they would represent about 19 percent of the total dwelling units in Windsor.
There was testimony before this court by Robert T. Silliman, chairman of the commission at the time of the plaintiffs' application. He voiced the concern of his commission as to the effect of uncontrolled apartment construction; the population density issue, in connection therewith; and its impact on basic town functions, such as schools, highways, police and fire protection, and related items. He indicated that following repeal of the RHD regulation in 1969, the town had contracted with an outside firm of planning consultants to study a comprehensive plan for the future growth of the town. The plan might include provisions for resumption of apartment construction. As of the date of the trial herein, public hearings on the plan, including regulations governing resumption of apartment construction, had not yet taken place. *Page 166 
Mario Zavarella, the present town planner of Windsor, testified in the same vein as Silliman. He stated that it was a legitimate planning function to delete, temporarily, regulations permitting apartment construction, in order to assess the impact thereof upon the town.
The testimony of Silliman and Zavarella was substantially contradicted by Eric Potter, a witness for the plaintiffs. Potter was town planner for Windsor up to 1968. He expressed the opinion that the alleged disadvantages of large scale apartment construction are not sufficient to support a total prohibition thereof by the town. Nevertheless, Potter admitted participating in the preparation, in October, 1967, of a document for the town, entitled "Recommended Future Land Use Map," which was adopted by the commission. The text annexed to the map reflected a recommendation of Potter and the commission that the proportion of apartments to private homes be limited to 10 percent, until future studies proved that a greater proportion was warranted. Thus, one of the plaintiffs' key witnesses conceded that, on balance, unrestricted growth of apartments in a town, such as Windsor, previously dominated by a one-family home residential pattern would be contrary to sound community planning.
 VII
It is a matter of common knowledge that recent years have witnessed substantial population movements to the suburbs. This has been accompanied by a search for apartments, as a means of a convenient and low-priced exodus from urban areas. The influx of new tenants has met with varying degrees of resistance from the established residents of the suburban towns. The problems are reviewed in numerous articles and comments, cited by both parties in their briefs. *Page 167 
The result has been a host of enactments and regulations, all designed to cope with or regulate the flight to suburbia. Total legislative exclusion of multiple dwellings or other uses has received respectable sanction in other jurisdictions. ValleyView Village, Inc. v. Proffett, 221 F.2d 412, 418
(6th Cir.); McDermott v. Village of Calverton Park,454 S.W.2d 577, 582 (Mo.); Fanale v. HasbrouckHeights, 26 N.J. 320. To the contrary, see GirshAppeal, 437 Pa. 237 (three justices dissenting).
As a practical matter, viewed in the light of the actual sequence of events, the repeal of the RHD regulation was not truly a total prohibition. It merely marked a temporary cessation of apartment construction to permit further studies on the impact of such units on the town.
Whether the action is one properly characterized as temporary cessation or total prohibition is immaterial. It was an attempt to solve a problem in community planning, where the issues were disputed, and where reasonable minds could differ as to an effective and fair solution.
In so acting, the commission was exercising its privilege and duty to amend or modify its regulations, when the facts and circumstances legitimately demonstrated a need for revision, so as to take account of contemporary or future conditions. MorningsideAssn. v. Planning Zoning Board,162 Conn. 154, 158; Malafronte v. Planning ZoningBoard, 155 Conn. 205, 209.
The issue being one which was "fairly debatable," the court should not substitute its judgment for that of the commission, as the initial agency acting on the problem. Coyle v. Planning Zoning Commission,162 Conn. 233, 236; Poneleit v. Dudas, 141 Conn. 413,418. The commission's decision was inextricably and *Page 168 
necessarily involved in the subsequent denial by the defendant board. Accordingly, the decision by the defendant must be sustained as reasonable and within the accepted limits of the police power.
It must be emphasized that this court, in its discussion of constitutionality, is not concerned with the wisdom of the defendant's decision. Roan v.Connecticut Industrial Building Commission,150 Conn. 333, 338.
 VIII
The plaintiffs' claims based on the confiscatory aspect of the present AA zoning are likewise without merit.
The plaintiffs offered testimony through Merwyn Strauss, a civil engineer, Frank V. Rossi, the chief engineer of Maskel Construction Company, and Richard McNamara, a local real estate appraiser. The net effect of their testimony was that the site development costs for the plaintiffs' parcel were so high, in terms of the ultimate sales prices of the finished lots, that sales of one-family homes thereon would not be economically feasible, or perhaps impossible.
Testimony on behalf of the defendant was produced from Ernest A. Phillips, the Windsor town engineer, Karl Kaffenberger, a real estate appraiser, and Benjamin D. Sasportas, a developer of many years' experience in the Windsor area. The evidence from these witnesses, summarized, was that the site development costs claimed by the plaintiffs were substantially excessive and that the actual site costs were in a range which would permit development and profitable sale of one-family homes in that zone.
Kaffenberger further testified that, in his opinion, the parcel in its present status had a fair market value of $50,000, as of October, 1972. *Page 169 
The evidence also disclosed that on or about December 3, 1971, the plaintiffs placed a first mortgage on the premises, based on a loan from Society for Savings, Hartford, Connecticut, in the sum of $50,000. The plaintiff Zelvin testified that at this time, considering all the facts and circumstances, including its present zoning, a fair market price for the parcel would be about $50,000.
The more credible evidence, in the opinion of the court, supports the position of the defendant.
It is clear that this case does not present the serious problem of complete nonuse, or a practically valueless parcel, by virtue of the denial, as in DelBuono
v. Board of Zoning Appeals, 143 Conn. 673, orGoldreyer v. Board of Zoning Appeals, 144 Conn. 641. In fact, the plaintiffs' counsel retreated from the claim of total confiscation, at the hearing before this court. He confined his argument to the milder protest that the parcel "is not a marketable commodity, if it's forced to be developed as it is presently zoned."
The parcel unquestionably still has substantial value, even in its present zoning classification. The inescapable conclusion is that no true case of confiscation, in the constitutional or any other sense, was proved by the plaintiffs.
Finally, insofar as any hardship may arise from the plaintiffs' ownership of the parcel, short of confiscation, they have no legal cause for complaint. Since they were aware of the zoning classification, and the absence of regulations permitting apartment development, at the time of their purchase in 1966, this negates any bona fide claim of hardship. M. R. Enterprises, Inc. v. Zoning Board of Appeals,155 Conn. 280, 282; Celentano v. Zoning Board of Appeals,136 Conn. 584, 587. Their financial disappointment, or deprivation of the possibility of increased *Page 170 
income, is not enough to support an allegation either of hardship or confiscation. Carlson v.Zoning Board of Appeals, 158 Conn. 86, 90.
If the plaintiffs are encountering problems in the development of the premises, the problems originate primarily from a number of their business decisions not directly related to the zoning restrictions.
The maximum possible enrichment of an owner or developer is not a controlling purpose of zoning.DeForest Hotchkiss Co. v. Planning ZoningCommission, 152 Conn. 262, 272.
 IX
The above comments on the constitutional issues are bolstered by some general rules applicable thereto. Laws and ordinances, or regulations adopted under the sanctions thereof, should not be held unconstitutional unless they are clearly unreasonable, destructive, or confiscatory. Cyphers v. Allen,142 Conn. 699, 705. There is a presumption of validity in favor of an ordinance or regulation, and it must be sustained unless its invalidity appears beyond a reasonable doubt. Troiano v. Zoning Commission,155 Conn. 265, 269; State ex rel. Higgins
v. Civil Service Commission, 139 Conn. 102, 111. The plaintiffs did not make such a showing in the present case.
 X
To summarize, the plaintiffs cannot prevail in this appeal, for the reasons contained in parts II and III hereinabove. As noted previously, the court's views have been expressed on the constitutional issues, not because they are considered determinative of the present case, but only because of the relevance claimed for them by the plaintiffs, and as actually litigated by the parties before this court. *Page 171 
Nothing herein should be construed, expressly or impliedly, as an unlimited sanction for a community to enact local legislation totally prohibiting a particular structure or use, of any type or character whatsoever, within its boundaries. The decision here is concerned solely with the particular facts and circumstances existing in Windsor, as of the date of the plaintiffs' application for a site development permit. Cadoux v. Planning Zoning Commission,162 Conn. 425, cert. denied, 408 U.S. 924; see Dandridge
v. Williams, 397 U.S. 471, 485.
There was no evidence whatsoever in this case demonstrating that the repeal of the RHD zone in 1969 was motivated by a desire to exclude a particular class of apartment dweller on the basis of specific ethnic origins, economic status, or other reasons, which might, in fact, be constitutionally impermissible. See Branfman, Cohen Trubek, "Measuring the Invisible Wall: Land Use Controls and the Residential Patterns of the Poor," 82 Yale L.J. 483, 486.
The plaintiffs failed to sustain their burden of proof. Lupinacci v. Planning Zoning Commission,153 Conn. 694, 699; Patterson v. Dempsey, 152 Conn. 431,445.
 The appeal is dismissed.