CALDOR, INC. *v.* DONALD E. THORNTON
(11002)

SPEZIALE, C. J., PETERS, HEALEY, SHEA and GRILLO, Js.

Argued March 29—decision released September 6, 1983

*Eliot B. Gersten,* for the appellant (plaintiff).

*Robert L. Fisher, Jr.,* for the appellee (defendant).

GRILLO, J. This appeal from the judgment of the trial court granting an application to confirm an arbitration award and concomitantly denying an application to vacate the award attacks, inter alia, the constitutional validity of § 53-303e of the General Statutes.[1]

The underlying facts culminating in the present appeal are not in dispute. During 1975, the defendant, Donald Thornton, began working as a department manager for the plaintiff, Caldor, Inc., which operates a

---

[1] In its entirety, General Statutes § 53-303e states: "MORE THAN SIX DAYS EMPLOYMENT IN CALENDAR WEEK PROHIBITED. EMPLOYEE OBSERVANCE OF SABBATH. EMPLOYEE REMEDIES. (a) No employer shall compel any employee engaged in any commercial occupation or in the work of any industrial process to work more than six days in any calendar week. An employee's refusal to work more than six days in any calendar week shall not constitute grounds for his dismissal.

"(b) No person who states that a particular day of the week is observed as his Sabbath may be required by his employer to work on such day. An employee's refusal to work on his Sabbath shall not constitute grounds for his dismissal.

"(c) Any employee,.who believes that his discharge was in violation of subsection (a) or (b) of this section may appeal such discharge to the state board of mediation and arbitration. If said board finds that the employee was discharged in violation of said subsection (a) or (b), it may order whatever remedy will make the employee whole, including but not limited to reinstatement to his former or a comparable position.

"(d) No employer may, as a prerequisite to employment, inquire whether the applicant observes any Sabbath.

"(e) Any person who violates any provision of this section shall be fined not more than two hundred dollars."

chain of retail department stores in Connecticut. In 1977, Caldor began opening for business on Sundays, thereby requiring the defendant and other department managers to work one out of every four Sundays. Although the defendant worked thirty-one Sundays between 1977 and 1979, in November, 1979, he informed Caldor that he would no longer work on Sunday as that day was his Sabbath.

Subsequently, the defendant had several meetings with Caldor executives in an attempt to resolve the problem. Caldor offered him two choices: (1) to continue in a supervisory capacity at a Massachusetts store, which did not require Sunday employment; (2) to remain at his current location in a nonsupervisory capacity as a member of the employee union, whose contract provided for nonattendance of work on the Sabbath. Thornton rejected both alternatives because of the distance and hardship involved in commuting or moving to Massachusetts, and because remaining in Connecticut as a union member included a decrease in pay from $6.46 to $3.50 per hour. When Caldor informed him, on Thursday, March 6, 1980, that there was "no alternative other than to revert you back to a rank and file at $3.50 an hour beginning this Monday," the defendant resigned from his job with the plaintiff. His last day of work was March 8, 1980.

On May 6, 1980, the defendant appealed Caldor's actions to the Connecticut state board of mediation and arbitration (hereinafter the board) alleging wrongful discharge under General Statutes § 53-303e in that as a department manager he was unable to observe his Sabbath. The parties agreed that the issue before the board was the validity of the defendant's claim under § 53-303e. The matter was heard by the board on July 14, 1980. In a two-fold attack on the validity of the defendant's claim, the plaintiff argued that Thornton

had not been "discharged" within the meaning of the statute, and further that the statute was unconstitutional.

The board, construing its authority as "quasi-judicial," concluded that it was not empowered to decide the constitutionality of the statute at issue. It therefore assumed the constitutionality of § 53-303e until a court decided otherwise. The board thereupon determined that Thornton had been "discharged" as a managerial employee in violation of § 53-303e, and issued an award in favor of the defendant.

On November 18, 1980, Caldor filed an application to vacate the arbitration award with the trial court pursuant to General Statutes § 52-418, alleging the award to be illegal and beyond the power of the arbitrators in that (1) Thornton was not "discharged" within the meaning of § 53-303e, and (2) § 53-303e was unconstitutional as a violation of the establishment clause of the first amendment to the United States constitution. The defendant subsequently filed a cross application, seeking confirmation of the arbitration award pursuant to General Statutes § 52-417. By memorandum of decision filed August 28, 1981, the trial court, *Brennan, J.*, concluded that § 53-303e did not violate the establishment clause. The court further concluded that the board was correct in finding that the defendant was discharged from his position of employment. Accordingly, the court granted the defendant's cross application to confirm the arbitration award while denying the plaintiff's application to vacate the award. From this judgment, the plaintiff has appealed.

On appeal, the plaintiff pursues its two primary claims presented before both the board and the trial court: (1) that the defendant was not "discharged" within the meaning of § 53-303e; and (2) that § 53-303e

is constitutionally infirm because the statute violates the establishment clause of the first amendment to the United States constitution.[2] Although we do not agree that the board exceeded its powers in determining that Caldor violated the provisions of § 53-303e, we agree with the plaintiff's contention that the statute does not pass constitutional muster under the strictures of the establishment clause.

The plaintiff first asserts that the board impermissibly exceeded its powers by finding Caldor in violation of § 53-303e. It contends that the statute refers only to "dismissal and discharge," and is therefore not applicable under the facts of the present case, which reveal that the defendant resigned his position. We find this claim unpersuasive.

It is settled law in this jurisdiction that "[a]ny challenge to an award on the ground that the arbitrator exceeded his powers is . . . properly limited to a comparison of the award with the submission." *Bruno* v. *Department of Consumer Protection,* 190 Conn. 14, 18, 458 A.2d 685 (1983). "Where the submission is unrestricted, 'the award is . . . final and binding and cannot be reviewed for errors of law or fact.' *Milford Employees Assn.* v. *Milford,* 179 Conn. 678, 683, 427 A.2d 859 (1980)." *Carroll* v. *Aetna Casualty & Surety Co.,* 189 Conn. 16, 19, 453 A.2d 1158 (1983). " 'Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the sub-

---

[2] "Congress shall make no law respecting an establishment of religion . . . ." U.S. Const., amend. I. The establishment clause is applicable to the states through the fourteenth amendment. *Cantwell* v. *Connecticut,* 310 U.S. 296, 303, 60 S. Ct. 900, 84 L. Ed. 1213 (1940).

mission is unrestricted, will they review the arbitrators' decision of the legal questions involved. *Meyers* v. *Lakeridge Development Co.*, 173 Conn. 133, 135, 376 A.2d 1105 [1977].' *Waterbury* v. *Waterbury Police Union,* 176 Conn. 401, 404, 407 A.2d 1013 (1979)." *Bic Pen Corporation* v. *Local No. 134,* 183 Conn. 579, 584, 440 A.2d 774 (1981).

Ordinarily, "[a]rbitration is a creature of contract and the parties themselves, by the terms of their submission, define the powers of the arbitrators." *Waterbury* v. *Waterbury Police Union,* supra, 403. In the present case, however, the statute itself mandates compulsory arbitration and defines the powers of the arbitrators.[3] Under subsection (c) of § 53-303e, "[a]ny employee, who believes that his discharge was in violation of subsection (a) or (b) of this section may appeal such discharge to the state board of mediation and arbitration. If said board finds that the employee was discharged in violation of said subsection (a) or (b), it may order whatever remedy will make the employee whole . . . ." Clearly, the language of subsection (c) empowers the board to resolve all issues arising under subsections (a) or (b), the operative provisions of § 53-303e. Moreover,

---

[3] Although there may be a question concerning the arbitrability of disputes arising under General Statutes § 53-303e in the absence of an agreement between the parties to submit to arbitration; *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960); *Steelworkers* v. *American Mfg. Co.,* 363 U.S. 564, 570-71, 80 S. Ct. 1343, 4 L. Ed. 2d 1403 (1960) (Brennan, J., concurring); *New Britain* v. *Connecticut State Board of Mediation & Arbitration,* 178 Conn. 557, 560, 424 A.2d 263 (1979); in the present case we need not reach this issue. Both parties freely submitted to arbitration pursuant to General Statutes § 53-303e (c), and nowhere in the proceedings below or on appeal to this court has either the plaintiff or the defendant challenged the arbitrability of the present dispute in light of the absence of an agreement between the parties. Under these circumstances we will consider the arbitrability issue waived. See *New Britain* v. *Connecticut State Board of Mediation & Arbitration,* supra, 560-61.

although the parties have consistently disputed the applicability of the "discharge" language within the statute to the facts of this case, they freely submitted this and all other issues concerning the validity of the defendant's claim under § 53-303e to the board, which entered its decision in favor of the defendant. The submission can only be construed as unrestricted.

The plaintiff, by alleging error in the construction of the scope of § 53-303e, "effectively seeks a second determination of the underlying dispute on the merits." *Carroll* v. *Aetna Casualty & Surety Co.*, supra, 23. Such a claim, regardless of whether it is construed as an attack on the factual or legal conclusions of the arbitrators, is "outside the permissible scope of judicial review." *Bruno* v. *Department of Consumer Protection*, supra, 20. When there is an unrestricted submission, the award need only conform thereto. The record before us clearly reveals that it did.[4]

Since the limited scope of judicial review accorded arbitration awards compels us to conclude that there was no error in the board's determination with regard to discharge, we turn to a consideration of the plaintiff's claim that § 53-303e is unconstitutional. See *State* v. *DellaCamera,* 166 Conn. 557, 560–61, 353 A.2d 750 (1974).

Our threshold inquiry is directed toward whether it was incumbent upon the board to consider the constitutional issue. The unrestricted submission clearly included the constitutional question, and, therefore, unless the

---

[4] Because of our conclusion concerning the scope of the submission, we agree with the defendant's contention that the trial court erred in reviewing the board's conclusion and agreeing that the defendant had indeed been discharged within the meaning of General Statutes § 53-303e. This error, however, is harmless, since the court ultimately reached the correct conclusion, albeit by impermissibly granting the plaintiff a second determination of the underlying dispute on the merits.

board's construction of the scope of its authority is correct, the award must be vacated as not in conformity with the submission. The board expressly declined to make such a determination, concluding that its "quasi-judicial" power does not encompass a decision as to the constitutionality of § 53-303e. We agree.

The powers of government are divided into three distinct departments—legislative, executive and judicial, judicial power being vested in a Supreme Court, an Appellate Court, a Superior Court and such lower courts as the General Assembly establishes.[5] " '[T]he powers granted to the General Assembly are legislative only and those granted to the judiciary are judicial only.' " *Szarwak* v. *Warden,* 167 Conn. 10, 31, 355 A.2d 49 (1974). "[T]he broad division between the power of the courts and the power of the legislature can be drawn as follows: 'It is the province of the legislative department to define rights and prescribe remedies: of the judicial to construe legislative enactments, determine the rights secured thereby, and apply the remedies prescribed.' *Atwood* v. *Buckingham,* 78 Conn. 423, 428, 62 A. 616 [1905]." *State* v. *Clemente,* 166 Conn. 501, 509-10, 353 A.2d 723 (1974).

" 'No court can directly set aside an Act of the legislature; and the power to indirectly invalidate legislation is one which in the nature of things can exist in the judicial department only under a constitution in the American sense, and is limited by the authority from which it is derived; it is not a power of veto or revision, but purely the judicial power of interpretation.' "

---

[5] "The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another." Conn. Const., art. II. "The judicial power of the state shall be vested in a supreme court, an appellate court, a superior court, and such lower courts as the general assembly shall, from time to time, ordain and establish. . . ." Conn. Const., amend. XX.

*State* v. *Menillo,* 171 Conn. 141, 147–48, 368 A.2d 136 (1976). Whether a statute is in conflict with the state constitution is the duty of the judiciary to determine. *Preveslin* v. *Derby & Ansonia Developing Co.,* 112 Conn. 129, 145, 151 A. 518 (1930). Indeed, lower courts of limited jurisdiction have been advised to leave the question of constitutionality to a higher appellate court unless the statute is clearly unconstitutional or unless the rights of litigants make it imperative that the court pass upon the constitutional question. *State* v. *Muolo,* 119 Conn. 323, 326, 176 A. 401 (1935); *Helm* v. *Welfare Commissioner,* 32 Conn. Sup. 595, 600, 348 A.2d 317 (1975).

In the present case the board, as an administrative agency, has not been granted the authority to consider constitutional issues. Furthermore, the constitutional challenge in the present case addresses the constitutionality of a statute, not with respect to its application but on its face. The legislature cannot confer upon an administrative agency the power to adjudicate facial unconstitutionality without doing violence to the separation of powers doctrine. *Zelvin* v. *Zoning Board of Appeals,* 30 Conn. Sup. 157, 163, 306 A.2d 151 (1973). " 'A statute can overstep constitutional bounds if it represents an effort by the legislature to exercise a power which lies exclusively under the control of the courts . . . .' " *Eielson* v. *Parker,* 179 Conn. 552, 560, 427 A.2d 814 (1980). We will not ascribe to the General Assembly legislative encroachment upon territory reserved for the judiciary. Nor can the parties themselves, by agreement, confer such jurisdiction upon the board. See *In re Application of Smith,* 133 Conn. 6, 9, 47 A.2d 521 (1946). The board did not err in refusing to decide the constitutionality of § 53-303e.[6]

---

[6] Our conclusion that the board does not possess the authority to decide issues of facial unconstitutionality does not conflict with the established

The plaintiff's principal claim is that § 53-303e violates the establishment clause of the first amendment to the United States constitution. It is settled law that in order to pass muster under the establishment clause, the statute " 'in question, first, must reflect a clearly secular legislative purpose, second, must have a primary effect that neither advances nor inhibits religion, and, third, must avoid excessive governmental entanglement with religion.' (Citations omitted.) *Committee for Public Education* v. *Nyquist,* 413 U.S. 756, 772–73, 93 S. Ct. 2955, 37 L. Ed. 2d 948 (1973). [See *Mueller* v. *Allen,* 463 U.S. 388, 103 S. Ct. 3062, 77 L. Ed. 2d 721 (1983).] If a legislative enactment fails any one part of the test, it must fall. *Stone* v. *Graham,* 449 U.S. 39,

principle that arbitrators act in a quasi-judicial capacity and are empowered to decide factual and legal questions unless the submission states otherwise. *Bruno* v. *Department of Consumer Protection,* 190 Conn. 14, 18–19, 458 A.2d 685 (1983). "As it is used in the separation of powers provision of the constitution . . . the 'judicial power' cannot constitute an exclusive grant of every activity in which courts may engage. ' " 'The rule of separation of [governmental] powers cannot always be rigidly applied.' " [Citations omitted.]' *Adams* v. *Rubinow,* 157 Conn. 150, 155, 251 A.2d 49 [1968]. There are activities in which both the legislature and the judiciary may engage without violating the prohibitions of the constitution." *State* v. *Clemente,* 166 Conn. 501, 510, 353 A.2d 723 (1974); see *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo,* 190 Conn. 510, 522, 461 A.2d 938 (1983). Because of the public policy favoring expeditious dispute resolution in the informal context of arbitration rather than in the more formal, time-consuming and expensive context of ordinary litigation, we have always respected the autonomy of the arbitration process and the attendant authority to decide questions of law and fact consistent with the submission. See *Milford Employees Assn.* v. *Milford,* 179 Conn. 678, 682–83, 427 A.2d 859 (1980); *Waterbury Teachers Assn.* v. *Waterbury,* 164 Conn. 426, 434, 324 A.2d 267 (1973). This autonomy does not, however, extend to determinations of facial constitutionality. A statute which granted the board such power, which lies exclusively under the control of the courts, would be void as a violation of the separation of powers doctrine. See *State* v. *Clemente,* supra, 510–11. We reserve for another day the extent to which an arbitrator may have authority to determine constitutional questions, such as the due process implications of challenged procedures, which do not attack a statute as being unconstitutional on its face.

40–41, 101 S. Ct. 192, 66 L. Ed. 2d 199, reh. denied, 449 U.S. 1104, 101 S. Ct. 904, 66 L. Ed. 2d 832 (1980)." *Griswold Inn, Inc.* v. *State,* 183 Conn. 552, 559–60, 441 A.2d 16 (1981). Applying this three-part test, the trial court concluded that § 53-303e does not offend the strictures of the establishment clause. Although "[w]e approach the question with great caution . . . and sustain the act unless its invalidity is, in our judgment, beyond a reasonable doubt"; *Edwards* v. *Hartford,* 145 Conn. 141, 145, 139 A.2d 599 (1958); we are nevertheless unable to agree.[7]

Subsection (b) of § 53-303e, upon which the defendant relied in bringing his claim of wrongful discharge before the board and which represents the fulcrum of the plaintiff's establishment clause claim, states: "No person who states that a particular day of the week is observed as his Sabbath may be required by his employer to work on such day. An employee's refusal to work on his Sabbath shall not constitute grounds for his dismissal."

The defendant, relying on *McGowan* v. *Maryland,* 366 U.S. 420, 81 S. Ct. 1101, 6 L. Ed. 2d 393 (1961), urges that we construe subsection (b) as merely allowing employees to designate their individual "day of

---

[7] Because of our conclusion concerning the establishment clause, we need not consider the plaintiff's claim that our decision holding the Sunday closing law unconstitutional; *Caldor's, Inc.* v. *Bedding Barn, Inc.,* 177 Conn. 304, 417 A.2d 343 (1979); renders General Statutes § 53-303e invalid. Nor need we consider whether § 53-303e is void under article seventh of the Connecticut constitution, or whether, as the defendant avers, this issue is not properly before us.

We reject the defendant's contention that the trial court erred in considering the constitutionality of § 53-303e. The defendant makes this argument by invoking the general rule that "one cannot on appeal question the constitutionality of the statute under which he appeals." *Vartelas* v. *Water Resources Commission,* 146 Conn. 650, 653, 153 A.2d 822 (1959). The short answer to this claim is that the plaintiff did not "appeal" under § 53-303e, and it was the defendant, not the plaintiff, who appealed his claimed discharge to the board.

rest," and therefore the subsection reflects the clear secular purpose of protecting " 'all persons from the physical and moral debasement which comes from uninterrupted labor.' " Id., 436. The defendant, underscoring the historical evolution of Sunday closing laws discussed in *McGowan,* would have this court construe the term "Sabbath" as utilized in subsection (b) as simply a "time of rest," without any religious overtones. We find this claim unpersuasive.

We note, first, that subsection (a) of § 53-303e, which prohibits employment for more than six days in any calender week, adequately addresses the valid secular purpose, upheld in *McGowan,* of forbidding uninterrupted labor. "There is a presumption of purpose behind every sentence, clause or phrase in a legislative enactment so that in construing it no part is to be treated as insignificant and unnecessary." *Connecticut Light & Power Co.* v. *Costle,* 179 Conn. 415, 422, 426 A.2d 1324 (1980). Subsection (b), however, adds the additional criteria that an employee who designates any day as his observance of his "Sabbath" may not be compelled to work on that day.

We cannot construe the term "Sabbath," as utilized in § 53-303e (b), as synonomous solely with "day of rest" and therefore devoid of religious overtones. The commonly accepted meaning; General Statutes § 1-1; of the word is a time of rest and worship, especially where, as here, the term is capitalized.[8] Moreover, to

---

[8] "Sabbath . . . 1. A season or day of rest. Specifi.: a The seventh day of the week in the Jewish calendar, corresponding to the period from Friday evening to Saturday evening, the observance of which as a day of rest and worship was enjoined in the Decalogue. It is kept by the Jews and some

the extent that "Sabbath" may be construed as a "day of rest," the "rest" is specifically mandated by the tenets of a particular religion.[9] See *Trans World Airlines, Inc.* v. *Hardison,* 432 U.S. 63, 67, 97 S. Ct. 2264, 53 L. Ed. 2d 113 (1977); *Redmond* v. *GAF Corporation,* 574 F.2d 897, 900 (7th Cir. 1978). " 'Observe' means to refrain from unnecessary work on the Sabbath . . ."; *United States* v. *Alburquerque,* 545 F.2d 110, 112 (10th Cir. 1976); as that particular day is deemed holy under the beliefs of various religious sects. See *Chrysler Corporation* v. *Mann,* 561 F.2d 1282, 1283 (8th Cir. 1977). Thus, "[t]he Sabbath is a day of rest and worship, generally recognized as such." *State* v. *Duncan,* 118 La. 702, 706, 43 So. 283 (1907). The day that is alloted pursuant to § 53-303e (b) comes with religious strings attached.

---

Christians. In the Eastern Churches Saturday is a half holiday on which the Liturgy is celebrated and no fasting is allowed (except on Holy Saturday). Menial work, however, is permitted. b The first day of the week, Sunday, observed by Christians as a day of rest and worship. . . . 2. *[not cap.]* A time of rest or repose; intermission of pain, effort, sorrow, or the like." Webster, New International Dictionary (2d Ed.).

"SABBATH, the weekly day of rest and religious observance. The term is derived from its use as the Hebrew *Shabbath,* denoting the seventh day of the week, or Saturday. Most Christians observe the Sabbath on Sunday, although some sects such as the Seventh Day Adventists keep it on Saturday. The Muslim Sabbath is Friday." 24 Encyclopedia Americana 68 (International Ed. 1982).

[9] "The reason given for resting on the Sabbath is twofold. First, the day has to be kept holy because God made heaven and earth in six days, 'and rested on the seventh day, wherefore the Lord blessed the Sabbath day and hallowed it' (Exodus 20:11). Second, the day serves as a reminder that 'thou wast a servant in the land of Egypt, and the Lord thy God brought thee out thence' (Deuteronomy 5:15). As strictly interpreted, the penalty for desecrating the Sabbath was death: 'whosoever doeth any work in the Sabbath day, he shall surely be put to death' (Exodus 31:15)." 24 Encyclopedia Americana 69 (International Ed. 1982).

Although the *McGowan* court upheld the "Sabbath Breaking" statute at issue in that case because of the valid secular purpose of providing a *common* day of rest for both religious and nonreligious citizens; *McGowan* v. *Maryland,* supra, 450–52; § 53-303e (b) takes this rationale one step further, a step which, in our view, invalidates the subsection under the establishment clause. Subsection (b) authorizes each employee to designate his or her own observance of Sabbath. The unmistakable purpose of such a provision is to allow those persons who wish to worship on a particular day the freedom to do so. We conclude that § 53-303e (b) does not pass the "clear secular purpose" test of establishment clause scrutiny.[10]

With respect to the second tier of establishment clause analysis, which prohibits the primary effect of an enactment to advance or inhibit religion, it is clear that "not every law that confers an 'indirect,' 'remote,' or 'incidental' benefit upon religious institutions is, for that reason alone, constitutionally invalid." *Committee for Public Education* v. *Nyquist,* supra, 771. Although a law which places an "imprimatur of State approval on religious sects or practices"; *Widmar* v. *Vincent,* 454 U.S. 263, 274, 102 S. Ct. 269, 70 L. Ed. 2d 440 (1981); is strong evidence that the enactment impermissibly advances religion, it is equally well settled that "a law may be one 'respecting an establishment of religion' even though its consequence is not

---

[10] By our decision we do not imply that the state may not legislate so as to allow individual employees to designate their desired day off. Even if we assume, however, that this was one purpose envisioned by the legislature in enacting § 53-303e (b), the state may not employ religious means to achieve secular ends. "The unmistakable message of the Supreme Court's teachings is that the state cannot employ a religious means to serve otherwise legitimate secular interests." *Karen B.* v. *Treen,* 653 F.2d 897, 901 (5th Cir. 1981), aff'd, 455 U.S. 913, 102 S. Ct. 1267, 71 L. Ed. 2d 455 (1982); see *Abington School District* v. *Schempp,* 374 U.S. 203, 224, 83 S. Ct. 1560, 10 L. Ed. 2d 844 (1963).

to promote a 'state religion' . . . and even though it does not aid one religion more than another but merely benefits all religions alike." (Citation omitted.) *Committee for Public Education* v. *Nyquist,* supra. Moreover, the scope of the benefit conferred by the enactment to both religious and nonreligious segments of society is an important indicator of primary effect. "The provision of benefits to so broad a spectrum of [religious and nonreligious] groups is an important index of secular effect. If the Establishment Clause barred the extension of general benefits to religious groups, 'a church could not be protected by the police and fire departments, or have its public sidewalk kept in repair.' " *Widmar* v. *Vincent,* supra, 274–75.

While § 53-303e (b) does not favor one religion over another, and does not provide direct aid to religious institutions in the form of money or property, it confers its "benefit" on an explicitly religious basis. Only those employees who designate a Sabbath are entitled not to work on that particular day, and may not be penalized for so doing. Workers who do not "observe a Sabbath" may not avail themselves of the benefit provided by the subsection, and are not entitled to take a specific day off with impunity. The inescapable conclusion is that § 53-303e (b) possesses the primary effect of advancing religion.

It is the third prong of establishment clause analysis, which forbids excessive governmental entanglements with religion, which is most troublesome when considering § 53-303e (b). Subsection (c) of § 53-303e empowers the state board of mediation and arbitration to resolve disputes arising under subsection (b). Inevitably, as employers challenge the sincerity of employees' Sabbath observance, the board's inquiry will encompass an analysis of the particular religious practices and will require a decision concerning the scope of religious

activities which may fairly be labelled "observance of Sabbath." Especially in an age of unparallelled religious freedom and diversity, "[t]his kind of state inspection and evaluation of the religious content of a religious organization is fraught with the sort of entanglement that the Constitution forbids." *Lemon* v. *Kurtzman,* 403 U.S. 602, 620, 91 S. Ct. 2105, 29 L. Ed. 2d 745, reh. denied, 404 U.S. 876, 92 S. Ct. 24, 30 L. Ed. 2d 123 (1971); see *Griswold Inn, Inc.* v. *State,* supra, 564. The enforcement mechanism of subsection (c), therefore, is exactly the type of "comprehensive, discriminating and continuing state surveillance"; *Lemon* v. *Kurtzman,* supra, 619; which creates excessive governmental entanglements between church and state.

We conclude that General Statutes § 53-303e (b) is clearly violative of the establishment clause, and the trial court therefore erred when it confirmed the arbitration award based on the statute and when it denied the motion to vacate that award.[11]

There is error, the judgment is set aside and the case is remanded with direction to render judgment granting the plaintiff's application to vacate.

In this opinion, SPEZIALE, C. J., PETERS and HEALEY, Js., concurred.

SHEA, J. (dissenting in part). I have no disagreement with the conclusion reached by the majority that General Statutes § 53-303e violates the establishment clause but I would not have reached that issue in the procedural posture in which it is presented by this case. I would find error in the refusal of the board of mediation and arbitration to decide this constitutional issue. I would find that the board of mediation and arbitra-

---

[11] We note that our decision extends only to subsection (b) of General Statutes § 53-303e. General Statutes § 1-3; see *State* v. *Menillo,* 171 Conn. 141, 145, 368 A.2d 136 (1976).

tion has "imperfectly executed" its powers by refusing to decide this constitutional issue, which is critical to a proper determination of the lawfulness of the plaintiff's discharge. See General Statutes § 52-418 (a) (4). For this reason I agree with the majority that the trial court erred in failing to grant the defendant's application to vacate the award, but I would also direct a rehearing in accordance with General Statutes § 52-418.

I disagree with the majority that the "quasi-judicial" power of the board "does not encompass a decision as to the constitutionality of § 53-303e." I am not aware of any decisions by the higher courts[1] of this country which support a distinction between constitutional issues and other questions of law with respect to the competency of arbitrators or administrative agencies to decide them. The majority appears to rely upon the separation of powers doctrine as precluding the delegation of "judicial power" outside the court system. A decision by a nonjudicial authority upon other legal questions, the propriety of which the majority opinion does not challenge, is an exercise of judicial power of the same kind as that involved in resolving a constitu-

---

[1] The only authority cited in the majority opinion which even considers the competency of a nonjudicial agency to declare a law unconstitutional is *Zelvin* v. *Zoning Board of Appeals,* 30 Conn. Sup. 157, 163, 306 A.2d 151 (1973), which contains the following: "Jurisdiction over such issues rests solely with the judiciary. *Riley* v. *Liquor Control Commission,* 153 Conn. 242, 250 [215 A.2d 402 (1965)]; *Preveslin* v. *Derby & Ansonia Developing Co.,* 112 Conn. 129, 145 [151 A. 518 (1930)]." The citation of *Riley* refers to a dictum that "we prefer, if possible, to decide" constitutional issues, but this court, nevertheless, refused to decide the constitutional issue raised because the requirements for a declaratory judgment had not been met. In *Preveslin* this court found an attempt by the legislature to overturn the effect of a prior decision of the court to constitute an unconstitutional encroachment upon the judicial authority. Neither case dealt with the power of an administrative agency or arbitrators to decide a constitutional issue which arises in the course of an adjudication within the scope of its delegated authority.

tional question. Not only is the distinction made by the majority wholly unprecedented, but it is also thoroughly impractical in the adjudication processes of arbitrators and public agencies where constitutional issues frequently arise. Will it be necessary hereafter to adjourn such proceedings until a judicial determination of the constitutional issue can be obtained as a kind of advisory opinion? To impose such a burden upon dispute resolution procedures, judicial or nonjudicial, is a wholly unwarranted extension of the separation of powers principle.

Accordingly, I dissent.