WATERBURY TEACHERS ASSOCIATION ET AL. *v.* CITY OF WATERBURY ET AL.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued December 6, 1972—decided March 7, 1973

*Kevin T. Nixon,* with whom were *Robert L. Krechevsky* and, on the brief, *Donald A. House, Neal B. Hanlon, Martin A. Gould* and *Richard D. Gould,* for the appellants (plaintiffs).

*M. J. Daly III,* with whom were *John D. Mahaney,* corporation counsel, and, on the brief, *James F. Meenan,* assistant corporation counsel, for the appellees (defendants).

MacDonald, J.   This appeal arises out of a dispute between the Waterbury Teachers Association and one of its members, Anthony Russo, as plaintiffs, and the city of Waterbury and its board of education, civil service commission, superintendent of schools and personnel director, as defendants.   Essentially, the dispute concerns (1) the denial of the plaintiff Russo's application to take an examination for the position of "principal III" on the ground that he lacked the necessary qualifications, and (2) the alleged unilateral addition of a duty for "principal III" which is claimed to have been made in violation of the contractual and statutory obligation of the board of education to negotiate concerning conditions of employment.   By their action, brought in the Superior Court in January, 1971, the plaintiffs sought injunctive relief and damages.

The undisputed facts are as follows:  The Waterbury Teachers Association (hereinafter WTA) is a

voluntary association composed of and representing a majority of the certified professional teachers of Waterbury. Under the provisions of §§ 10-153a to 10-153g of the General Statutes, the WTA is the exclusive representative for the plaintiff Russo and other employees of the board of education of Waterbury and, as such, has the right to negotiate with the board concerning salaries and other conditions of employment. On December 29, 1969, the WTA entered into a three-year contract with the board of education, which contract was negotiated under the above statutes and was in effect from January 1, 1970, to January 1, 1973. Under the provisions of § 10-153d of the General Statutes, "[t]he terms of such contract shall be binding on the legislative body of the town or regional school district, unless such body rejects such contract at a regular or special meeting called for such purpose within thirty days of the signing of the contract." The board of aldermen of the city of Waterbury, as its legislative body, did not reject the contract within thirty days and, in fact, affirmatively approved the contract by vote on December 29, 1969, and thereby bound the city of Waterbury and the other defendants to the contract.

The civil service system for the city of Waterbury became effective on November 6, 1962, by referendum vote on the electors of the city, and on November 8, 1966, an amendment of implementation thereof was made, also by referendum. Waterbury Charter §§ 201–214. The adoption and implementation of the civil service system were made by amending the charter of the city of Waterbury, and these amendments provide that the civil service commission shall adopt rules and regulations. Id. § 205. Pursuant to the rules and regulations thus adopted, the em-

ployees of the city are divided into unclassified service and classified service, and teachers in the Waterbury school system are placed in the unclassified service and administrators in the classified service. Id. § 204; Waterbury Civil Service Rules & Regs., c. 2 §§ 2, 3. Principals in the Waterbury school system are administrators and are thus in the classified service. The regulations also establish two classifications of elementary schools in Waterbury: class II and class III, an elementary school II being a school with up to nineteen regular classrooms and an elementary school III a school with twenty or more such rooms. During September and November of 1970, there was no class I elementary school classification in Waterbury and there had not been for the previous seven or eight years. It is the job prerogative of the board of education of the city to define and designate what is an elementary school II and what is an elementary school III.

The personnel director of the city and the civil service commission, pursuant to the city charter as amended, have a duty to determine and draw up job classifications or job specifications, and these specifications require the approval or disapproval of the board of aldermen of the city. Waterbury Charter §§ 205, 206. Job specifications for elementary school principal II and principal III were prepared by the office of the personnel director and were approved by the civil service commission on April 15, 1970, after a consultation with the superintendent of schools. On April 20, 1970, the Waterbury board of aldermen approved these specifications, which set forth a general statement of duties, distinguishing features of the position, examples of work, required knowledge, skill and abilities, and acceptable experience and training for each posi-

tion. The specifications for elementary school principal III contain, inter alia, the following paragraph concerning acceptable experience and training: "Two years' experience as an Elementary School Principal II and possession of a certificate issued by the State of Connecticut for the position of Elementary School Principal III." The changes in job specifications for elementary principal III put into effect prior to an examination given on June 13, 1970, thus reduced the experience required from three years as elementary principal II to two years as elementary principal II, and under the heading of examples of work added: "Evaluates all teachers as prescribed by the Superintendent of Schools and/or the Board of Education."

On April 27, 1970, the civil service commission announced and posted a notice of examination stating that a written examination for the position of elementary principal III on a promotional basis was to be given on June 13, 1970, and that applications were to be filed on or before 4:30 p.m. on May 22, 1970. Being a promotional examination, as opposed to an open competitive examination which has no restrictions as to employment of applicants, the examination was restricted to permanent employees of the Waterbury department of education. The WTA did not object to the giving of this promotional examination. Thirteen teachers in the Waterbury system were eligible to take the examination, and two teachers made application to take and did take it. Though both of these teachers passed the examination, only one accepted a position, and there still remained with the civil service commission a pending requisition from the board of education for the position of elementary principal III. To fill this requisition the civil service commission,

with the approval of the board of education, announced on September 15, 1970, that an open competitive written examination for the position of elementary principal III would be held on November 14, 1970, applications to be filed before 4:30 p.m. on October 15, 1970. The essential difference between the two postings for the elementary principal III examinations was that the June 13, 1970 examination was on a promotional basis while the November 14, 1970 examination was on an open competitive basis. In response to the announcement six applications were filed, five from teachers in the Waterbury system and one from outside the system. Only one of the six applicants qualified to take the examination and, on taking the test, that applicant failed. The position of elementary principal III remains unfilled, and no new examination for the position is scheduled.

The plaintiff Anthony Russo has been employed by the Waterbury board of education as a teacher in grade 5 at Walsh School since September, 1970. From August, 1968 to June, 1970, Russo was a supervising principal in the Ann Antolini School, New Hartford, Connecticut, which was an elementary school consisting of grades four, five and six. Ann Antolini School had eleven regular classrooms in full-time use and three part-time classrooms, for a total of fourteen classrooms. In September, 1970, Russo held a Connecticut state teaching certificate which qualified him to hold the position of elementary school principal. On September 28, 1970, an application from Russo to take the open competitive examination for elementary school principal III was received at the office of the personnel director of the city. Sometime in October, 1970, Russo was notified that he was ineligible to take the examination be-

cause of "kind of experience." On receipt of this notice, Russo wrote a letter of inquiry dated October 17, 1970, to the personnel director in which he stated that he did not understand what was meant by "kind of experience." On October 20, 1970, the civil service commission notified Russo that he did not have the necessary qualifications to take the examination because he did not have two years' experience in an elementary school with a kindergarten through eighth grade. Furthermore, the personnel director, prior to October 17, 1970, officially determined that Russo did not qualify to take the November 14 examination because it was discovered that during his first year as supervising principal of the Ann Antolini School he taught school routinely for two periods per day and only the balance of his time was supervisory. A principal II, or even a supervising vice principal in the Waterbury school system, is defined as an administrator who does not routinely teach, and the Waterbury school system has no classification of teaching principals. Russo had not mentioned in his application that he had been required to teach while serving as an elementary supervising principal.

On November 14, 1970, the civil service commission gave the examination. Four days later, Russo appealed in writing from the actions of the defendant personnel director in refusing to accept his application and in giving the examination. Russo then received a letter from the executive secretary of the civil service commission, dated November 24, 1970, denying his appeal and noting that his letter was sent after the examination had been given and that owing to the lateness of the request no remedial action was possible. Prior to the date of the examination, Russo had taken no steps under the

grievance procedure provided to members of the WTA under their contract with the board of education.

On October 14, 1970, the WTA filed a formal grievance concerning the open competitive examination to be held for elementary principal III on November 14, 1970, purportedly pursuant to the grievance procedure provided in the contract with the board of education. Russo had not joined in this grievance. The grievance filed was scheduled for a hearing before an American Arbitration Association arbitrator on March 8, 1971, but on January 7, 1971, the WTA, together with Russo, brought this action against the defendants, stating claims identical to those made in the grievance filed October 14, 1970.

The first claim of error pursued by the plaintiffs pertains to the refusal of the trial court to stay the action. When the proceedings before the court were nearing completion, the plaintiffs moved for a stay pursuant to § 52-409 of the General Statutes, which provides: "If any action for legal or equitable relief or other proceeding is brought by any party to a written agreement to arbitrate, the court in which such action or proceeding is pending, upon being satisfied that any issue involved in such action or proceeding is referable to arbitration under such agreement, shall, on motion of any party to the arbitration agreement, stay the action or proceeding until an arbitration has been had in compliance with the agreement, provided the person making application for the stay shall be ready and willing to proceed with such arbitration." When the motion was made, the trial had proceeded for several days on issues raised by a writ and complaint dated December 11, 1970—issues identical to those scheduled for

arbitration by a grievance filed two months earlier, on October 14, 1970—and, as previously noted, the trial was nearing completion. In making their oral motion for a stay at this late date, the plaintiffs claimed that (1) they had not known "until yesterday afternoon" about the one-person examination (although the record fails to show that such information was not readily available or whether the plaintiffs could or should have known about it had they been diligent), and (2) they had just learned of the existence of § 52-409 (although this statute had been in effect since 1929; Public Acts 1929, c. 65 § 2; Rev. 1930 § 5841; Rev. 1949 § 8152; a period of more than forty years).

Decision on the motion was reserved, and the hearing continued until its completion shortly thereafter. The motion for a stay was denied, in a judgment rendered on February 18, 1971, for reasons stated in the court's memorandum of decision filed on the same date.

The plaintiffs claim that the word "shall" in § 52-409 is mandatory and requires that the court in which the action is brought stay the proceedings pending arbitration. It is true that arbitration is a favored procedure in this state. *International Union* v. *Fafnir Bearing Co.,* 151 Conn. 650, 653, 201 A.2d 656; *Local 1078* v. *Anaconda American Brass Co.,* 149 Conn. 687, 691, 183 A.2d 623 (concurring opinion); *Gaer Bros., Inc.* v. *Mott,* 144 Conn. 303, 307, 130 A.2d 804. But it also is true that arbitration "is intended to avoid the formalities, the delay, the expense and the vexation of ordinary litigation." *Kantrowitz* v. *Perlman,* 156 Conn. 224, 226, 240 A.2d 891. "Legislative provisions designed to secure order, system and dispatch in proceedings are ordinarily held to be directory where, as here, they are

stated in affirmative terms or, to express it differently, are unaccompanied by negative words." *Winslow* v. *Zoning Board,* 143 Conn. 381, 388, 122 A.2d 789; *Broadriver, Inc.* v. *Stamford,* 158 Conn. 522, 529, 265 A.2d 75.

We find it unnecessary, however, to determine this question—involving, as it does, legislative intent—by reason of our conclusion that any right to arbitration under the statute, regardless of how interpreted, had been waived by the plaintiffs' course of conduct in proceeding nearly to completion in a court trial of the precise issues previously claimed for arbitration. "It is, or course, true that an arbitration clause may be waived by the parties or by the one entitled to its benefit. . . . Thus, unjustifiable delay in seeking arbitration may warrant a finding of waiver. . . . The same result follows from the going to trial without insisting upon the arbitration condition." *Batter Building Materials Co.* v. *Kirschner,* 142 Conn. 1, 11, 110 A.2d 464. "The conduct of the . . . [plaintiffs] gave no assurance that . . . [they] would resort to arbitration if the motion was granted or that the motion was other than a delaying action. . . . The denial of the motion for a stay was proper." *Mayron's Bake Shops, Inc.* v. *Arrow Stores, Inc.,* 149 Conn. 149, 154, 176 A.2d 574.

The plaintiffs' second claim of error is directed against the conclusion of the trial court that there was no duty on the part of the defendants to negotiate conditions of employment with the WTA pursuant to §§ 10-153d to 10-153g of the General Statutes. In overruling the plaintiffs' claim of law, the court held that there was no duty on the defendants to negotiate "either job conditions or job specifications beyond the teaching phase." In so holding,

the court reasoned that job specifications for administrative or supervisory positions, under an amendment to the city charter dated November 8, 1966, and the civil service rules and regulations adopted pursuant thereto, are reserved to the civil service commission and the board of aldermen. Waterbury Charter § 205. This reservation, in the court's view, completely excluded the negotiation process as to all defendants.

Sections 10-153a to 10-153h of the General Statutes, as amended, are sometimes referred to as the "Teacher Negotiation Act" (see Public Acts 1965, No. 298, §§ 1–5), and § 10-153d provides, in relevant part: "The town or regional board of education and the organization designated or elected as the exclusive representative for the appropriate unit [the WTA in this case], through designated officials or their representatives, shall have the duty to negotiate with respect to salaries and other conditions of employment about which either party wishes to negotiate . . . ." It is clear from § 10-153b that the act is not limited to teachers who are not in administrative positions. Principals are "certified professional employees" and are covered by the act. § 10-153b. It is also clear that the act applies notwithstanding the amendment to the Waterbury charter and the civil service rules and regulations adopted pursuant thereto, since § 10-153g expressly states: "Notwithstanding the provisions of any special act, municipal charter or local ordinance, the provisions of sections 10-153a to 10-153f shall apply to negotiations concerning salaries and conditions of employment conducted by boards of education and certified personnel." Thus, the board of education does have a duty to negotiate concerning salaries and conditions of employment of principals.

Having reached this conclusion, the next logical step in our inquiry would appear to be the determination of whether the duty to evaluate teachers was a negotiable condition of employment of a principal, or perhaps even of a teacher. We find, however, that we need not decide this question because the plaintiffs failed to sustain their burden of showing that the duty to evaluate teachers was a newly added duty and, therefore, a subject for negotiation. Absent a showing that there was no preexisting duty to evaluate teachers, there was no proof of breach of contract or of a violation of a duty to negotiate under §§ 10-153b—10-153g. As readily appears from the complaint in this action, the plaintiffs' claim is predicated on the fact that the defendants added a duty to the job of principal III and in so doing violated their contractual and statutory obligations, but nowhere in the record is this fact established. The only established fact which might bear upon this point is that the civil service commission in the job specifications of April 20, 1970, and in their April and June, 1970 notice of examination for principal III, under "Examples of duties" of principal III, added the phrase "evaluates all teachers . . . ." This is not equivalent to showing that prior to April, 1970, a principal III in fact had no duty to evaluate teachers. It also is important to note that the addition to the notice of examination of a principal III was made under the heading "Examples of duties." It is obvious from the heading itself that such a listing of duties was not intended to be all inclusive, so the absence of the phrase "evaluates all teachers" from previous notices proves, of itself, little, if anything. Furthermore, in the job specifications of April, 1970, the examples of work are plainly marked "Illustrative only." For

these reasons we find that the plaintiffs failed to sustain their burden of establishing the addition of a new duty to evaluate teachers, and therefore we need not further pursue this claim.

The final claim of error pursued by the plaintiffs is that the trial court erred in failing to reach the conclusion that the denial by the defendant civil service commission and personnel director of the plaintiff Russo's application to take the examination and their refusal to have a hearing regarding that denial violated the provisions of article first, § 8, of the constitution of Connecticut and the fifth and fourteenth amendments to the constitution of the United States, and, further, violated article VIII, § 2, of the contract between the WTA and the board of education and chapter 1, § 6, of the civil service rules and regulations. Chapter 1, § 6, of the civil service rules and regulations provides: "An employee, applicant, or other person may appeal in writing any action of the Director of Personnel to the Civil Service Commission, whose decision, after providing a reasonable opportunity for all interested parties to be heard, shall be final unless otherwise specified in these regulations or the Charter Amendment." Since no specific time for appeal is given in this provision, a reasonable time must be allowed. Appealing the decision of the personnel director four days after the date of the examination, when the plaintiff Russo had an adequate opportunity to appeal prior to the examination (approximately three weeks) and when no excuse was shown for this delay, must be considered to be an untimely appeal. The need for the orderly and effective administration of examinations requires this holding. But even if Russo's appeal had been timely, we find that the conclusions of the trial court that Russo

did not meet the qualifications for taking the elementary school principal III examination scheduled for November 14, 1970, and that he was ineligible to take the examination were amply supported by the findings. Maltbie, Conn. App. Proc. § 171.

In view of the foregoing conclusions, we do not find it necessary to discuss the other assignments of error.

There is no error.

In this opinion the other judges concurred.