276 So.2d 837 (1973)
H. Robert GETTLES, Appellant,
v.
COMMERCIAL BANK AT WINTER PARK, a Florida Banking Corporation, and Walston & Co., Inc., Appellees.
Nos. 72-613, 72-614.
District Court of Appeal of Florida, Fourth District.
April 27, 1973.
*838 Herbert A. Langston, Jr. of Driscoll, Conrad & Langston, Orlando, for appellant.
Arthur C. Rinsky of van den Berg, Gay, Burke & Dyer, Orlando, for appellee-Commercial Bank.
William M. Rowland, Jr. of Rowland & Petruska, Orlando, for appellee Walston & Co., Inc.
MAGER, Judge.
The appellant, Gettles, seeks to review two orders which have been consolidated for the purpose of this appeal.
After reviewing the briefs and record on appeal we are of the opinion that the appellant has failed to demonstrate reversible error with respect to the order of the trial court dismissing appellant's third party complaint against Commercial Bank at Winter Park, and, accordingly, we affirm, without prejudice.[1]
We are, however, of the view that there is merit to appellant's contention with respect to the order of the trial court compelling arbitration and staying further judicial proceedings.[2]
On December 28, 1970, Walston & Co., Inc., appellee-plaintiff below, in the stock brokerage business, filed suit for damages against appellant Gettles, defendant below, as a result of an alleged breach of a customer's agreement previously entered into between the parties. Appellee contended that it had bought certain securities at the behest of the appellant but appellant failed to repay the amounts advanced by the appellee for such purchase as contemplated by the customer's agreement resulting in appellee having to sell the securities at a loss to it of some $12,947.45. Appellee's suit below seeks to recover the amount of the loss.
The customer's agreement which is apparently a standard document utilized by stockbrokers and customers in the purchase *839 and sale of securities contained an arbitration clause as follows:
"17. Any controversy between you and the undersigned arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules then obtaining, of either the American Arbitration Association, or the Board of Arbitration of the New York Stock Exchange, or of any other organized market or Board of Trade or exchange of which you are a member and upon which the transaction was executed, as the undersigned may elect. If the undersigned does not make such election by registered mail addressed to you at your main office within five (5) days after receipt of notification from you requesting such election, then the undersigned authorizes you to make such election in behalf of the undersigned. Any arbitration hereunder shall be before at least three arbitrators and the award of the arbitrators, or of a majority of them, shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction."
On September 8, 1971, Gettles filed his answer and counterclaimed for damages resulting from Walston's alleged wrongful breach of an agreement whereby Walston agreed to extend the time within which Gettles was to repay the amounts previously advanced.
On December 7, 1971, Gettles filed a second amended counterclaim containing three counts: (1) a claim for damages based upon Walston's alleged breach of the extension agreement, (2) a claim for damages for lost income and impaired earning capacity alleged to have been a proximate result of Walston's breach of the extension agreement, and (3) a claim for punitive and compensatory damages as a result of the alleged slanderous statements made by a representative of Walston.
On December 23, 1971, Walston filed a motion to dismiss Gettles' second amended counterclaim setting forth various legal grounds for such dismissal including the contention that the counterclaim failed to state a cause of action.
It was not until January 31, 1972, that Walston filed a motion to compel arbitration of the matters set forth in the counterclaim and moving the court to stay further proceedings pending the outcome of such arbitration. On March 20, Walston filed an amended motion for arbitration seeking to compel arbitration of all of the claims set forth in the complaint as well as in the counterclaim.
On March 23, the trial court entered its order compelling arbitration of all the claims and matters set forth in the complaint and the counterclaim except the claim of slander which the court stayed pending the outcome of the arbitration on the other matters.
A review of the sequence of events and chronology of the actions of the parties before the trial court indicates, we feel, the adoption by Walston of a prior position inconsistent with arbitration. The customer's agreement upon which Walston's suit was predicated and which Walston contends Gettles violated clearly indicated that "any controversy between you (Walston) and the undersigned (Gettles) arising out of or relating to this contract or the breach thereof shall be settled by arbitration ...". The very nature of the complaint reflects the existence of a controversy between the parties; in paragraph 10, Walston asserts that the claimed deficiency "remained due and unpaid notwithstanding repeated demands made by plaintiff upon defendant for payment thereof."
Disregarding the provision for arbitration in the customer's agreement Walston chose to initially file suit rather than submit the matter to arbitration; the suit having *840 been filed in December 1970 with the request for arbitration having been made in January 1972 some thirteen months later.
We find no merit to Walston's contention that it was not until Gettles filed his counterclaim in which "new and independent issues" were raised that the controversy became ripe for arbitration. The fact that Walston filed a motion to dismiss after and directed to Gettles' second amended counterclaim, asserting various legal grounds, not only negates Walston's contention but is consistent with the position that Walston intended to waive arbitration. As heretofore observed, the controversy was initially subject to arbitration; having chosen the judicial forum Walston waived its right to submit the matter to arbitration.
In Ojus Industries, Inc. v. Mann, Fla. App. 1969, 221 So.2d 780, 782, the Third District similarly concluded:
"Waiver in this connection does not depend on timing of the motion to compel arbitration (where not unreasonably delayed), but rather on the prior taking of an inconsistent position by the party moving therefor. Thus, where a plaintiff, in disregard of his right to arbitration, files suit for determination of the controversy, he will be held to have waived his right to compel arbitration thereof. The same will apply to a defendant who by counterclaim submits the matter, which was to be arbitrated, to the court for determination... ." (Emphasis added.)
The court in Ojus cited an earlier decision, Mike Bradford & Co. v. Gulf States Steel Co., Fla.App. 1966, 184 So.2d 911, which contains the following pertinent language:
"`* * * Whatever right to arbitrate existed, it was a right the choice of which rested on either party, and those provisions as far as effective were as binding on one party as the other. In fact, both parties had proceeded without wholly recognizing the conversion-board clause and disregarding the same for more than a year. The plaintiffs, whether bound by the clause or not, repudiated it by commencing this law suit and the defendants joined in the repudiation by answering to the merits without a demand for arbitration or a motion to stay the suit until arbitration could be had. Almost uniformly such conduct on the part of the parties constitutes an abandonment or waiver of the right to arbitration and a consent to the submission of the controversy to the courts. This rule has been established by an almost uniform line of decisions and this rule is not a new one in this jurisdiction.'" (Emphasis added.)
The general rule set forth in Bradford and reaffirmed in Ojus is as follows:
"The rule of general adherence seems to be that if a party to a contract, containing a provision for arbitration, even though expressed as a condition precedent, himself, commences suit, or takes other inconsistent action therewith, he will be held to have waived his rights to arbitration." (citations omitted.)
We therefore conclude that by reason of the foregoing Walston waived its right to compel arbitration.[3] Accordingly, the order compelling arbitration is reversed and the cause remanded for further proceedings consistent with this opinion.
Affirmed, in part; reversed, in part.
REED, C.J., and OWEN, J., concur.
NOTES
[1] We do not consider the order of the trial court or the affirmance by this court as constituting an adjudication on the merits of any of the matters embraced within the counterclaim involving the same parties in another action pending before the trial court.
[2] The interlocutory appeal as to this order was improvidently taken by the appellant inasmuch as an interlocutory appeal is not available to review a lower court order in a common law action. Shearson, Hammill & Co. v. Vouis, Fla.App. 1971, 247 So.2d 733. Pursuant to F.S. Section 59.45, F.S.A., the notice of appeal is treated as a petition for certiorari. Favors v. City of Tampa, Fla.App. 1971, 246 So.2d 172; see also Home News Publishing Co. v. U-M Publishing, Inc., Fla.App. 1971, 246 So.2d 117.
[3] Our decision is predicated upon the rationale in Ojus and Bradford, supra, as applied to the circumstances of this case. It is therefore unnecessary to consider the applicability of the decision in Shearson, Hammill & Co. v. Vouis, Fla.App. 1971, 247 So.2d 733.