[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION TO STAY ANDMOTION TO COMPEL
In this matter the summons and complaint were served on the defendant Advest Inc. on September 22, 1993. The plaintiffs have asserted claims against the defendant in connection with six brokerage accounts maintained by Advest.
On September 21, 1993 the plaintiffs initiated an arbitration proceeding before the New York Stock Exchange raising the same claims presented in the court suit. The defendant received notice that arbitration proceedings were initiated on October 25, 1993. The defendant Advest refused to stipulate to a stay of court proceedings and the plaintiffs have now moved to stay court litigation and to compel the defendant to proceed to arbitration.
The allegations in the court action and the arbitration claim pertain to the defendant's handling of six customer accounts. The accounts are as follows:
Plaintiff Gabriel Levine established a brokerage account with Advest and signed an Option Agreement and Customer Agreement on or about September 25, 1986. On or about December 2, 1986, Gabriel Levine signed a second Customer Agreement pertaining to his individual account.
Anna V. Levine established a brokerage account with Advest and signed a Customer Agreement on or about March 30, 1987, and an Option Agreement on or about April 8, 1987. Anna V. Levine died in 1992. Gabriel Levine, as executor of the Estate of Anna V. Levine, appears as plaintiff in connection with activity in the account of Anna V. Levine.
Gabriel and Anna V. Levine established a joint brokerage account with Advest and signed a Customer Agreement on or about March 30, 1987, and an Option Agreement on or about May 15, 1987.
The Yeshiva University — Gabriel and Anna V. Levine Scholarship Fund established a brokerage account with Advest and signed a Customer Agreement and an Option Agreement on May 14, 1987. The agreements are signed by Gabriel Levine as trustee.
The Levine Trust for the benefit of Yeshiva University CT Page 7576 ("Yeshiva Trust") established a brokerage account with Advest and executed an Option Agreement and a Customer Agreement on or about September 23, 1986. The agreements are signed by plaintiff Robert E. Berman, Trustee.
Plaintiff Gale Investments established a brokerage account with Advest and signed an Option Agreement on or about September 23, 1986, and an Investment Club Cash Account agreement on or about May 14, 1987, The agreements are signed by Gabriel Levine, general partner of Gale Investments.
Several individuals and entities who allege they are investors in Gale Investments also assert claims for losses in that account with the defendant Advest. These plaintiffs did not sign the Investment Club Cash Account agreement.
1
The defendant claims that the plaintiffs have waived their right to arbitrate their claims by first commencing litigation in a judicial forum. The position taken, if correct, would be determinative of all issues now before the court since the waiver would apply to all classes of plaintiffs bringing suit in this case.
It is no doubt true as the defendant claims that "an arbitration clause may be waived by the parties or by the one entitled to its benefit", Waterbury Teachers Ass'n v.Waterbury, 164 Conn. 426, 435 (1973). Cases cited by the defendant have also said that "a party who commences an action is (generally . . . assumed to have waived any right it may have had to submit, the issues to arbitration'",Zurich Ins. Co. v. Evans, 392 N.Y.S.2d 564, 566 (1977), quoting DeSapio v. Kuhlmeyer, 362 N.Y.S.2d 843, 846, cf alsoWaterbury Teachers Assn. v. Waterbury supra and BetterBuilding Materials Co. v. Kerscher supra, see also Lawtonv. Cain, 172 So.2d 734, 736, 737 (La. 1965), Bradford Co.v. Gulf States Steel Co., 184 So.2d 911 (Fla., 1966), 17A C.J.S. Contracts § 515 (11) page 889.
As a threshold matter it should be said that the issue of waiver is a question for the court and not the arbitrator whether the arbitration clause is considered a CT Page 7577 broad or narrow type. This is so because the waiver issue is necessarily unrelated to the merits of the underlying dispute. The issue of waiver is solely relevant to the resolution of the motion to compel arbitration or stay court proceedings which being before the court must be decided by the court, cf McDonnell v. Dean Witter Reynolds,Inc., 620 F. Sup. 152, 157 (D.C. Conn. 1985), TrafalgarShipping Co. v. International Milling Co., 401 F.2d 568 (2 Cir, 1968).
The waiver issue as it affects the right to arbitration is similar to waiver questions in other areas of the law including contract law. A court must decide if a party by its actions "intentionally" relinquished a known right, Zurich Insurance Co. v. Evans, 392, N.Y.S.2d at p. 566; "the essential question is whether, under the totality of circumstances, the . . . party claiming arbitration has acted inconsistently with the arbitration right", NationalFoundation for Cancer Research v. A. G. Edwards SonsInc., 821 F.2d 772, 774 (D.C. Cir., 1987).
Given these general principles coupled with strong federal and state policies favoring arbitration, it is not surprising that the general rule is that the mere commencement of litigation by a plaintiff does not ipso facto constitute a waiver by that party of its right to stay the proceedings and compel arbitration. It has been explicitly so held in Doers v. Golden Gate Bridge et al,588 P.2d 1261, 1265 (Cal. 1979) a well reasoned case which cites federal authority such as Merrill, Lynch, Pierce,Fenner Smith v. Lecopulus, 553 F.2d 842, 845 (2d Cir, 1977) also see Complaint of Ballard Shipping Co, 752 Supp 546, 549 (A.R.I., 1990), Nuclear Installation Services Co.v. Nuclear Services Corp. , 468 F. Sup. 1187, 1194 (E. D. Pa., 1979, Drexel Burnham Lambert v. Warner, 665 F. Sup. 1549,1553 (S.A. Fla., 1987).
Cases which make the flat statement that the mere commencement of litigation requires a finding that the right to arbitrate has been waived usually involve situations where the party initiating litigation substantially prosecuted the court action or even completed it before claiming a right to arbitration. Thus in ZurichInsurance Co. v. Evans, supra the action proceeded to the point of trial and the plaintiff then chose not to proceed CT Page 7578 to judgment — all this apparently before claiming arbitration rights, also see Application of Gerakares, 155 N.Y.S.2d 771, 773 (1956). In Gettles v. Commercial Bank,276 So.2d 837 (Fla., 1973) the plaintiff filed suit in December of 1970 and waited until January 1972 to file a motion to compel arbitration. In Waterbury Teachers Assn. v.Waterbury, supra, the plaintiff didn't file for a stay of litigation until "proceeding nearly to completion in a court trial", id at page 435.
In U.S. v. Darurn Construction Co., 750 F. Sup. 536
(D.D.C., 1990) it was held that a subcontractor's active participation in a lawsuit against a contractor for two months — several motions were filed, preliminary relief was requested and discovery was pursued — in effect waived the subcontractor's right to arbitration even absent a finding of prejudice cf Drexel Burnham Lambert Inc. v. Warner, 665 F. Supp at page 1553.
Also see Bell v. Herzog, 332 N.Y.S.2d 501 (1972) andOklahoma Public Co. v. Parsons Whittmore, 8 N.Y.S.2d 432, 434 (1938) relied upon by Zurich Insurance Co. where the parties seeking arbitration had initiated a suit and either engaged in substantial litigation or concluded it before even requesting arbitration; the courts had no difficulty in finding a waiver of arbitration rights under these circumstances. As an aside it should be noted that Singerv. Jefferies Co., Inc., 571 N.Y.S.2d 680 (1991), cited by both sides here for a variety of reasons, if carefully read, doesn't explicitly decide that there is a conflict between New York and federal law on the waiver issue but merely holds it will apply federal law, see discussion at page 684.
All of this doesn't mean that the commencement of litigation is not a factor to be considered on the waiver issue, Complaint of Ballard Shipping Co., supra at page 549, Davis Corp. v. Interior Steel Equipment Co.,669 F. Sup. 32, 33 (D.D.C., 1987) — it is merely one factor to be considered.
Applying a strict waiver analysis to this case it cannot be said that the plaintiffs waived any right to have arbitration by the mere filing of the suit in court. The day before the suit was served here the plaintiffs made a CT Page 7579 demand for arbitration with the New York Stock Exchange. The fact that notice of the arbitration claim wasn't served on the defendant by the exchange is irrelevant to the question of the plaintiffs' intention as evidenced by their actions. The plaintiffs filed a motion to compel arbitration and stay court proceedings just six weeks after the return date of the court suit. The only added step that the plaintiffs have taken is to file a motion to amend their complaint to add two plaintiffs — a motion which apparently has not been heard yet.
Furthermore the actions of the plaintiffs must be viewed in light of the fact that they faced possible statute of limitation defenses to their claims. Initiation of court action under such circumstances can thus be viewed as a protective measure to forestall such defenses and cannot fairly be construed as an intentional waiver of any right to arbitration, Davis Corp. v. Interior SteelEquipment Co., 669 F. Supp at page 34; also compare language in Zurich insurance Co. v. Evans where the court said commencing litigation has not been found to constitute waiver "where a party sought to preserve the status quo while arbitration was pending", 392 N.Y.S.2d at page 566. Using a waiver analysis then no waiver can be found here.
It must be said, however, that an element of confusion has been added to the use of the waiver analysis by the language in some of the federal cases that "a party is not deemed to have waived its right to arbitration by filing a court action unless the other party has been prejudiced in the interim", Hibbard Brown Co. v. ABC Family Trust etal., 772 F. Sup. 894, 896 (D. Md 1991) which cites Kramer v.Hammond, 943 F.2d 176 (2d Cir, 1991), also see DrexelBurnham Lambert Inc. v. Warner, 665 F. Supp at page 1554; this also appears to be the California position, see Doersv. Golden Gate Bridge, 588 P.2d at page 1265 which cites several Second Circuit cases as standing for this proposition and states its "approach" is similar to that taken by the federal courts.
In fact the prejudice requirement is quite helpful to litigants in the plaintiffs' position. It basically means that even if commencement of litigation would otherwise constitute a waiver of arbitration rights a party can in effect reclaim its right to arbitrate if the party sued and CT Page 7580 now resisting arbitration has not been prejudiced. But a requirement that "waiver" can't be found unless the party sued who opposes arbitration has been prejudiced strictly speaking renders the waiver analysis irrelevant. That is, if the party opposing arbitration can't show prejudice, presumably a stay to the litigation will be granted and arbitration will be compelled under federal case law no matter what the initiation of litigation might or might not indicate about any intent to waive arbitration by the party initiating the lawsuit.
Applying the prejudice test, which goes as far as can be gone in encouraging arbitration, certainly no "waiver" can be found here. The defendant can make no credible claim it was prejudiced by the mere initiation of this court suit — little in the way of pleadings have been filed. No discovery has occurred and the motions to stay and compel were filed little over a month after the return date. The only "litigation" in this case has been that generated by the defendant's resistance to the claim for arbitration. When the federal cases talk of prejudice, they do not consider the relative tactical advantages to the party opposing arbitration that would result if the matter was left in the courts — that would stand the federal policy of favoring arbitration on its head. Rather prejudice means the actual time and expense spent by the party initially sued in court prior to the request for arbitration. It would be unfairly prejudicial to permit a party to sue in court, forcing the other side to engage in substantial litigation then to allow that party to stop everything and demand arbitration — unnecessary expense and the opportunity for judicial manipulation and forum shopping argue strongly against a stay of judicial proceedings in such a situation, see reasoning of HibbardBrown Co Inc. v. ABC Family Trust et al., supra at 772 F. Supp pages 896 et seq. and Drexel Burnham Lambert v.Warner, supra at 665 F. Sup. 1553-1554. Also see excellent discussion of factors that should be considered in determining prejudice in Cyclone Roofing Co. v. DavidLavave Co., 321 S.E.2d 872, 876, 877 (N.C., 1984) which reviews federal and state cases on this subject.
None of these considerations apply here, there has not been sufficient prejudice to the defendant to warrant a finding of waiver of arbitration rights. CT Page 7581
For all of the reasons stated the court finds that the plaintiffs did not waive any rights they might have to arbitration by the commencement of this lawsuit.
2
The court must then analyze the merits of the plaintiffs' request that litigation be stayed and that the defendant be compelled to arbitrate.
The contracts before the court involve interstate commerce so the claims involved in this case fall within the ambit of the Federal Arbitration Act (F.A.A.) 9 U.S.C.A. §§ 1-16 (West 1970 and Supp 1993). There is a strong federal policy favoring arbitration and a strong state policy, Moses Cone Hospital v. Mercury ConstructionCorporation, 460 U.S. 1, 24 (1982), White v. Kampner,229 Conn. 465, 471 (1994). But "a person can be compelled to arbitrate a dispute only if, to the extent that, and the manner in which he has agreed to do so", Mansala v. ValveCorp of America, 157 Conn. 362, 365 (1969).
The F.A.A. only gives a party a right to obtain an order directing that "arbitration proceed in the manner provided for in (the parties') agreement. 9 U.S.C. § 4. As the court said in Volt Information Sciences Inc. v.Leland Stanford Junior University, 489 U.S. 468, 478.
 . . . "the FAA does not require parties to arbitrate when they have not agreed to do so. . . . nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement. . . . It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms. . . . The Act was designed `to make arbitration agreements as enforceable as other contracts, but not more so.'"
The teaching of Volt Information Sciences and White v.Kampner then is that in deciding motions like those presently before the court, the contract for arbitration must be examined using ordinary principles of contract interpretation but with an important proviso based on the CT Page 7582 policy favoring arbitration. The so-called "positive assurance" test mandates that doubts in the interpretation of contractual language should be resolved in favor of "coverage", that is, arbitration, United Steel Workers ofAmerica v. Warrior Gulf Navigation Co., 363 U.S. 574, 582
(1960), Board of Education v. Frey, 174 Conn. 578, 582
(1978). The policy favoring arbitration set forth in MosesH. Cone should have this effect on a court's decision making process in interpreting a contract — "in construing an arbitration agreement within the coverage of the FAA, `as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability", 489 U.S. at page 475 quotingMitsubishi Motors Corp v. Soler Chrysler-Plymouth Inc.,473 U.S. 614, 626 (1985). As the Moses H. Cone court goes on to say "ambiguities" must be resolved in favor of arbitration, id. at page 476. But the question remains, do the contractual arbitration provisions fall within the so-called "grey area of arbitrability?" If they do not "the positive assurance test is not applicable", White v.Kampner, 229 Conn. at page 473 and a party cannot be compelled to arbitrate if the plain language of the contract indicates it did not agree to do so.
What then does this agreement say as to arbitration? The language is as follows:
 It is understood that the following agreement to arbitrate does not constitute a waiver of the right to seek a judicial forum where such a waiver would be void under the federal securities laws.
 The undersigned agrees, and by carrying an account for the undersigned you agree, that except as inconsistent with the foregoing sentence, all controversies which may arise between us concerning any transaction or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration in accordance with the rules then prevailing of the Arbitration committee of the National Association of Securities Dealers, Inc., the American Arbitration Association, the Board of Arbitration of the New York Stock Exchange or the Board of Arbitration of the CT Page 7583 American Stock Exchange as I may elect. If I do not make such election by registered mail addressed to you at your main office within five (5) days after a request from you for such election, I authorize you to make such election on my behalf. The award of the arbitrators or of a majority of them shall be final, and judgment upon the award may be entered in any court, state or federal, having jurisdiction.
The arbitration contract also contains so-called choice of law language which says:
 "This agreement and its enforcement shall be governed by the laws of the State of New York."
Pursuant to the agreement the plaintiff chose to submit its arbitration claim to the New York Stock Exchange (N.Y.S.E). The N.Y.S.E Department of Arbitration Rules provide in Rule 603:
 "No dispute claim or controversy shall be eligible for submission to arbitration under this code where six (6) years shall have elapsed from the occurrence or event giving rise to the act or the dispute, claim or controversy. This section shall not extend applicable statutes of limitations, nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction."
The resolution of this case turns on the interpretation and legal effect of the choice of law clause in this contract in light of Volt Information Sciences Inc. v.Board of Trustees of Leland Stanford Jr. University,489 U.S. 468 (1989) and the reasoning of cases cited by the plaintiff from the Second Circuit Conticommodity ServicesInc. v. Philipp Lion, 613 F.2d 1222 (1980) and the post-Volt
case of Shearson Lehman Hutton Inc. v. Wagoner, 944 F.2d 114
(1991).
In another context it has been said of a choice of law provision
 "A choice of law provision, by itself, is merely shorthand incorporation into the contract of rules which, for the most part could have been CT Page 7584 explicitly written into the agreement by the parties without reference to any particular state or its law", Time Share Vacation Club v. Atlantic Resorts Ltd., 735 F.2d 61, 65 (CA3, 1984)
"Undoubtedly, parties to a contract may expressly select the choice of law by which it is to be governed",Fairfield Lease Corp. v. Pratt, 6 Conn. Cir. 537, 539 (1971). Such a stipulation when made governs the contractual rights of the parties, Pollak v. Danbury Mfg.Co., 103 Conn. 553, 557 (1925), see generally 6A Corbin, Contracts § 1446 page 484 et seq.
To leap ahead somewhat and leave aside considerations that must be discussed — i.e. the policy implications of the FAA and the Second Circuit Authority — what does New York law say on the effect of Rule 603 of the NYSE?
The court in Merrill Lynch Pierce, Fenner Smith Inc.v. De Chaine, 600 N.Y.S.2d 459 (1993) says the following:
 "The interpretation that has been given section 15 of the National Association of Securities Dealers Code of Arbitration Procedure — that such is not a statute of limitations but a substantive eligibility requirement limiting the range of disputes the parties agreed to arbitrate should be adopted for the identically worded Rule 603 of the New York Stock Exchange Arbitration Rules, and the timeliness of respondent's demand for arbitration left to the courts. Respondent's reliance on Matter of Conticommodity Servs. [Philipp Lion], 613 F.2d 1222
does not avail in view of the more recent decision in Volt Information Sciences v. Board of Trustees of Leland Stanford Jr. Univ., 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 holding that the Federal Arbitration Act does not preempt a choice of state law to govern the arbitration. Under New York law, which the parties' agreement specifically designates, courts are authorized to stay arbitration if the claim would have been time-barred had it been asserted in CPLR 7502[b]). We also agree with the IAS court because Rule 603 is not a statute of limitations, it cannot be tolled by allegations of fraud (Jones Co. v. Sorrells, 957 F.2d 509, 512-513)", CT Page 7585 id. p. 460
The court has thus held that Rule 603 serves as a substantive bar to arbitration and not as a procedural limitation subject to the arbitrator's jurisdiction.
The court cites Matter of Prudential Bache Sec. v.Archard, 579 N.Y.S.2d 890 (1992) which supports its position. At one point the plaintiff's brief refers to these as opinions of "lower" New York courts. That may be true in the sense that they are not Court of Appeals cases but Supreme Court Appellate Division cases — on the other hand they are a lot higher on the chain of authority than this court as far as interpreting New York law is concerned. Also the Archard case does cite the Court of Appeals case of County of Rockland v. Primiano Const. Co., 431 N.Y.S.2d 478
(1980) to support its reasoning — that court in footnote 2 at page 482 said "while compliance with periods of limitation imposed by statutes is generally for the courts, compliance with contractual periods of limitation is for the arbitrator." What the New York courts in DeChaine and Archard are holding is that Rule 603 time provisions are to be treated like periods of limitation imposed by New York arbitration statutes, cf City SchoolDistrict v. Poughkeepsie Teachers Assn., 364 N.Y.S.2d 492, 497
([ef] of App. NY, 1974) and are substantive eligibility requirements limiting the range of disputes the parties agreed to arbitrate.
It should also be noted that Archard was decided in 1980, nine years before Volt and six years before these agreements so the New York law was settled at the time of contract formation and can't be characterized as a postVolt development which therefore cannot bind the parties through the adoption of a choice of law provision.
From another perspective the choice of law provision and the New York case law that it may be said to have imported into this agreement only support a view that can otherwise be garnered from a plain reading of this contract. That is Rule 603 which is incorporated by reference into the contract is a substantive eligibility requirement within the jurisdiction of the courts and not a procedural statute of limitations subject to the jurisdiction of the arbitrator. CT Page 7586
In that sense the cases from the Third, Sixth, and Seventh Courts of Appeal that reach the same conclusion are not some maverick line of authority at odds with the aims of the FAA or in deep conflict with the Second Circuit Court of Appeals. All these cases do is proceed on the premise that they have the factual task of interpreting the arbitration agreement before them to determine whether the parties have agreed to arbitrate a particular dispute. They then state what seems rather obvious — that the parties have agreed to incorporate by reference Rule 603 of the NYSE into their agreement or its similarly worded NASD counterpart, Paine Webber Inc. v. Hartmann, 921 F.2d 507,509 (CA 3, 1990). If the cases are closely read they then merely proceed to interpret the contracts before them and hold that Rule 603 gives the courts the jurisdiction to determine arbitrability, Paine Webber Inc. v. Farnham,870 F.2d 1286 (CA 7, 1989), Paine Webber Inc. v. Hartmann,921 F.2d 507 (CA 3, 1990). Edward Jones Co. v. Sorrells,957 F.2d 509 (CA 7, 1992), Roney Co. v. Kassab, 981 F.2d 894, (CA 6, 1992), Paine Webber Inc. v. Hoffman, 984 F.2d 1372
(CA 3, 1993). They are nothing more or less than contract interpretation cases and their reasons for interpreting Rule 603 as a substantive eligibility requirement are persuasive.
Rule 603 explicitly says that after six years have passed from the events giving rise to the dispute the dispute "shall not be eligible for submission to arbitration." As the Hartmann court reasons at921 F.2d p. 513 Webster's defines "eligible" as "fitted or qualified to be chosen or used" or "worthy to be chosen or selected." Citing the leading Seventh Circuit case of Paine WebberInc. v. Farnham, 870 F.2d 1286 the court went on to hold that the word "eligible" must be given its plain and literal meaning and interpreted . . . as absolutely barring stale disputes from reaching arbitration. The court compared Belke v. Merrill Lynch Pierce Fenner Smith,693 F.2d 1023 (CA 11, 1982) where a party failed to comply with the requirement that "arbitration be commenced within one year after the cause of action accrued by service upon the other of a written demand for arbitration." Hartmann
distinguished Rule 603 whose language stands "in stark contrast" to this type of provision whose "language is redolent of a statute of limitations." Hartmann agreed CT Page 7587 with Belke that the requirement on arbitration commencement in the contract before that court was "procedural" and should be decided by the arbitrator.
The language of Rule 603 stating, "This section shall not extend applicable statutes of limitation nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction" mirrors the 1984 amendment to the NASD arbitration code and supports the court's interpretation of Rule 603. In other words it assumes the court has jurisdiction of claims beyond the six-year period. In proposing the change to its rules the NASD stated:
 "The proposed rule should make the code's time limitation co-extensive with various state statutes of limitation and permit all securities related disputes which are eligible for a judicial disposition
to be resolved by arbitration." (Emphasis added) S.E.C. Form 19b-4. Proposed Rule change by NASD. File No. SR-NASD-84-16, pages 8-9.
This court concludes then that Rule 603 is a substantive eligibility requirement within the court's jurisdiction and insofar as the choice of law provision importing New York decisional authority into this contract might be said to contractually compel that result it does not conflict with what the court interprets to be the contractual intent of the parties. The inclusion of such a provision supports the court's interpretation of the contract and what the parties in fact agreed to regarding their arbitration rights by entering into it. Faced with the responsibility of contract interpretation the court then is doing no more than the California court did in VoltInformation and that case indicated this court had a right to perform that task and that no floating body of federal substantive arbitration law dictated a predetermined result in cases of this type.
Nothing in the two Second Circuit Court of Appeal cases, much cited by the plaintiffs, compels a result contrary to the one reached by the court.
Conticommodity Services v. Philipp Lion,613 F.2d 1222 (1980) did not deal with substantive limitation on the CT Page 7588 "life of the obligation to arbitration or an "eligibility" requirement before arbitration could occur. The case merely considered the effect of a one year statute of limitations written by the parties themselves into the contract. Obviously in a contract with a broad clause arbitration agreement such a provision would be subject to interpretation by the arbitrator. The rather uninformative and confusing case of Shearson Lehman Hutton Inc. v.Wagoner, 944 F.2d 114 (1991), although it alludes to the contract between the parties which contemplates referral to NYSE arbitration, really was dealing with the effect of a state statute of limitations. id pp 100-121. There is admittedly broad language in Wagoner at 944 F.2d 121:
 "Although Conticommodity involved a one year time limitation set forth in the arbitration agreement itself, we stated emphatically that any limitations defense — whether stemming from the arbitration agreement, arbitration association rule or state statute — is an issue to be addressed by the arbitrators."
Nothing in Conticommodity Services or flowing from the issue before it supports this language. Taken literally this language can be viewed as conflicting with the holding of the U.S. Supreme Court in Volt Information which this court has a more immediate obligation to follow. In any event given the issue before the Wagoner court the language is dicta.
In any event Conticommodity Services and Wagoner do not conflict with the Third, Sixth, and Seventh Circuit Court of Appeals cases previously cited by the court. As noted, the New York cases dealt with statute of limitation issues or time bar limitations actually written into the agreement. The Hartmann court conceded that there was "abundant precedent holding that time bar clauses in arbitration agreements are essentially procedural in nature and thus should not be interpreted by courts as substantive bars to arbitration." 921 F.2d at page 512. But theHartmann court went on to reason that Rule 603 was in fact a substantive eligibility bar to arbitration that must be determined by the court. That is, the issue before theWagoner court was not the issue before Hartmann and the issue before this court and that is reflected by the fact CT Page 7589 that Wagoner didn't even allude to opinions from the previously mentioned Circuit Courts of Appeal. That there is no conflict between those circuits and more importantly that Second Circuit decisions don't require a result contrary to the one reached by this court is indicated by reference to an illuminating footnote in Merrill LynchPierce Fenner Smith v. Shaddock, 822 F. Sup. 125 SDNY, 1993). There the court at page 136, footnote 13, said the following:
 13. Merrill Lynch also points to decisions from the Third, Sixth and Seventh Circuits which, according to Merrill Lynch, suggest that "arbitrability and timeliness issues are undeniably for courts not arbitrators to decide." See Paine-Webber Inc. v. Hartmann, 921 F.2d 507, 510-514
(3rd Cir. 1990). Roney Co. v. Kussab, 981 F.2d 894, 897-900 (6th Cir. 1992); Edward D. Jones Co. v. Sorrells, 957 F.2d 509, 511-14 (7th Cir. 1992). First, this proposition runs directly counter to the rule in this Circuit requiring timeliness issues to be submitted to arbitration, as was expressly recognized by the Third and Sixth Circuits. See Hartmann, 921 F.2d at 512 (noting the abundant authority from other circuits that time-bar defenses may be submitted to arbitration); Kassab, 981 F.2d at 898 (same). Second, the decisions cited involved time limitations imposed by the arbitral entity's own rules, compliance with which was required before a controversy could, by the express terms of the rules, be considered "eligible for submission to arbitration." The courts found this provision to constitute a substantive limitation on the life of the obligation to arbitrate, see Sorrells, 957 F.2d a 514, or an "eligibility" requirement non-compliance with which prevented the obligation to arbitrate from arising, see Hartmann, 921 F.2d at 513; Kassab, 981 at 898-99. This eligibility requirement was explicitly differentiated from compliance with statutes of limitations, which remained for the arbitrators to decide. Hartmann, 921 F.2d at 513-14. We note that there is no allegation here that respondents have failed to comply with the NASD's similar "eligibility" requirements.
CT Page 7590
 Shaddock was authored by a district judge in the Second Circuit who was well aware of and discussed thoroughlyConticommodity Services and Wagoner in other portions of his opinion.
The court must finally decide whether applying the requirements of Rule 603 the plaintiffs' claims are eligible for arbitration. Mr. Daniel McAuliffe, vice president and Director of Compliance at Advest Inc. submitted an affidavit indicating the dates of transaction in these various accounts. He also represented as to each of the accounts they were transferred to Paine Webber at each customer's request pursuant to a transfer form dated September 22, 1987. No counter affidavits have been filed by the plaintiffs.
The court believes that for the purposes of Rule 603 the arbitration claim should be held to have been instituted on September 22, 1993 when the plaintiffs filed submission agreements with the NYSE. That is the fair date under all the circumstances since that is a date they chose to submit their claim. The service date of October 25, 1993 was in the court's understanding under the control of the NYSE arbitration board since it makes the actual service. If the September 22, 1987 is taken as the date for determining eligibility under the six-year rule then the only transaction not barred from arbitration is one transaction on September 23, 1987 made by Mr. Levine.
The plaintiffs argue that the obligations of the defendant didn't end as to their accounts until they were physically transferred to Paine Webber on October 6, 1987. In other words the defendant had a duty to supervise the handling of these accounts until Paine Webber actually received them. The court cannot accept the notion that the defendant had a duty to supervise these accounts after a request to transfer them had been made by the customers. The September 23, 1987 transaction was according to the December 13, 1993 defendant's brief initiated by Mr. Levine not Advest so the fact that this transaction occurred cannot be taken as a recognition or admission by Advest that it had a duty to supervise the accounts. Nothing in the cases cited by the plaintiffs, Paine Webber v. Hoffman,984 F.2d 1372, 1381 (CA 3, 1993), Roney Co. v. Kassab,981 F.2d 894, 900 (CA 6, 1992) supports the notion that the CT Page 7591 defendant would have a continuing duty to supervise the accounts after the request to transfer. In fact any activity in these accounts initiated by Advest after such a request might be a legally risky undertaking for it.
For all of the above stated reasons the motions stay and compel are denied except as to the one mentioned transaction of September 23, 1987.
Corradino, J.